THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THOMAS C. PLATT, Appellant.

Where a statute prescribes "residence" as a qualification for the enjoy-ment of a privilege or the exercise of a franchise, the word is equivalent to the place of domicile of the person who claims its benefit.

In January, 1880, defendant was appointed a commissioner of quarantine under the act of 1863 (§ 54, chap. 358, Laws of 1863), which, in defining the qualifications of those officers, requires them to be "residents of·the Metropolitan Police District." In an action to oust him from the office on the ground that he was not, at the time of his appointment, a resident of the police district, these facts were conceded. Defendant was born

in the village of Owego, Tioga county, and resided there until 1878, in which year he sold his family residence and has not kept house anywhere since. He boarded at a hotel in that village until September, 1879, since which time, except during the summer, he, with his wife, has boarded, or lived at a hotel in the city of New York, retaining, however, a room at the hotel in Owego until September, 1882, using it on occasional visits during that period. Since April, 1879, he has been secretary or president of an express company in New York and president of a bank in Owego, and since October, 1880, he has been a partner in a manufacturing firm carrying on business at Owego. During the same period he has nearly every year, and whenever he has exercised the right anywhere, voted at Owego. In 1880, after he had qualified as quarantine commissioner, he offered to vote at an election in that village; his vote was challenged on the ground that he was a non-resident; he took the general oath and voted under the challenge. In 1881, in acknowledging the execution of a deed, he made oath that he then resided in Owego. Upon the trial he testified that he never had intended to change or abandon his domicile in Owego. *Held,* ,the facts justified a finding that defendant did not, at the time in question, have a legal residence and domicile in the metropolitan police district, and was, therefore, not eligible to the office; and that a judgment of ouster was properly rendered.

Reported below, 50 Hun, 454.

(Argued October 9, 1889; decided November 26, 1889.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made September 11, 1888, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

The nature of the action and the facts are sufficiently stated in the opinion.

*W. W. MacFarland* for appellant. The proposition that when any statute of this state requires that a citizen should reside in a certain locality as a qualification for a particular office, it is not enough that he should have actually resided there before his appointment to the office, at the time of such appointment and during his whole incumbency; it is also necessary that he should have utterly discarded his domicile of origin, and all the incidents and rights, in theory of law, attaching to such domicile, is erroneous. (1 R. S. 101, 102, 122, 345, 348, 349, 370, 817, §§ 10–15, 34; Desty on Taxation,

58.)   Actual domicile is always, in the main, a question of intention, and the fact of actual residence is only important as evidence bearing upon the intention.   (*Dupuy* v. *Wurtz*, 53 N. Y. 561, 562, 566; *Bell* v. *Kennedy*, L. R., 1 Sc. & Div. App. Cas. 307.)  Where the expressions " residence " or "reside" are found in general statutes, or in a particular statute prescribing a qualification of residence for office, they mean actual physical presence there, dwelling, inhabitancy, and have never been held to mean anything else.   (*In re Thompson*, 1 Wend. 45; *Frost* v. *Brisbane*, 19 id. 14; *Haggart* v. *Morgan*, 5 N. Y. 428; *Bell* v. *Pierce*, 51 id. 12.)   There is a distinction between residence and domicile. (*U. H. Co.* v. *Hersee*, 79 N. Y. 454; *Queen* v. *Vice Chancellor*, L. R., 7 Q. B. 471; *Atty-Gen.* v. *McLean*, 1 H. & C. 750; *Blackwell* v. *England*, 8 E. & B. 541; *Hewer* v. *Cox*, 3 E. & E. 428; *Bd. of Suprs.* v. *Davenport*, 40 Ill. 197; *Johnson* v. *Smith*, 43 Miss. 499.)

*E. Countryman* for respondent.   Statutory provisions respecting the drawing of the panel are generally regarded as directory merely, and irregularities therein, unless plainly operating to the prejudice of the challenging party, form no ground for challenging the array. (Thom. & Mer. on Juries, § 143; *Friery* v. *People*, 2 Abb. Ct. App. Dec. 216; *Ferris* v. *People*, 48 Barb. 17; 35 N. Y. 125, 129; *Dolan* v. *People*, 64 id. 485; *Cox* v. *People*, 19 Hun, 432; 80 N. Y. 500; *People* v. *Petrea*, 92 id. 129; *Pierson* v. *People*, 18 Hun, 239, 242; *Gardner* v. *People*, 6 Park. Cr. R. 157; *People* v. *Ransom*, 7 Wend. 417; *People* v. *Jewett*, 3 id. 314; *Cole* v. *Perry*, 6 Cow. 584; *Rafe* v. *State*, 20 Ga. 60, 64, 65; *Mapes* v. *People*, 69 Ill. 524, 529; *Wilhelm* v. *People*, 72 id. 468; *People* v. *Madison Co.*, 125 id. 334; *State* v. *Williams*, 3 Stew. [Ala.] 454, 461; *Platt* v. *Grappe*, 12 La. 451; *State* v. *Miller*, 26 La. Ann. 579; *State* v. *Gidney*, 28 id. 630; *State* v. *Gut*, 13 Minn. 342, 353, 354; *Com.* v. *Lippard*, 6 S. & R. 395; *State* v. *Squaines*, 2 Nev. 226; *Claussen* v. *LaFronz*,

1 Iowa, 227, 241, 242; *State* v. *Knight*, 61 Mo. 373; *People* v. *Davis*, 73 Cal. 355; *State* v. *Pitts*, 58 Mo. 556–558; *State* v. *Smith*, 67 Me. 328; *Colt* v. *Eves*, 12 Conn. 243; *Johnson* v. *State*, 33 Miss. 363; *Burlingame* v. *Burlingame*, 18 Wis. 285; *People* v. *Allen*, 6 Wend. 486; *Marchont* v. *Longworthy*, 6 Hill, 646; *Matter of E. C. Bk.*, 18 N. Y. 200; *Wheeler* v. *Chicago*, 24 Ill. 105, 107; *Ex parte Heath*, 3 Hill, 43, 47; *Gale* v. *Mead*, 2 Denio, 160; *Thomas* v. *Clapp*, 20 Barb. 165; *Metcalf* v. *Mayor, etc.*, 17 St. Rep. 97; *In re Broadway Widening*, 63 Barb. 573, 579, 593; *People* v. *Common Council of Rochester*, 5 Lans. 11, 16; *People* v. *Yonkers*, 39 Barb. 266; *In re M. L. Ins. Co.*, 80 N. Y. 531, 535; *Morse* v. *Buffalo*, 35 Hun, 613; *People* v. *Packenham*, 24 N. Y. S. R. 564, 565; *People* v. *Jackson*, 111 N. Y. 362, 368, 369; *Sayles* v. *Smith*, 12 Wend. 57; *Maxon* v. *Annos*, 1 Denio, 204, 206; *Strong* v. *Elliott*, 8 Cow. 27, 30; *Westgate* v. *Handlin*, 7 How. 372; *Merritt* v. *Earle*, 31 Barb. 38.) The defendant has always been, and now is, an intruder, usurping, without right, the functions of the office of commissioner of quarantine. (Laws of 1863, chap. 358, § 54; Laws of 1857, chap. 569, § 1; Laws of 1860, chap. 259, § 2; Laws of 1864, chap. 403, § 2; *People ex rel.* v. *Draper*, 15 N. Y. 532; Laws of 1881, chap. 537, pp. 562, 760, 765.) The law requiring commissioners of quarantine to reside in the metropolitan police district is still in force for that purpose, notwithstanding the subsequent repeal of the original acts establishing and enlarging the district for police purposes. (Laws of 1863, chap. 358, § 54; Wilberforce on Statutes, 342; Maxwell on Statutes, 514; Smith's Statutory Law, 752; Potter's Dwarris on Statutes, 191, 192; Sedgwick's Statutory Law [2d ed.] 229; *Queen* v. *Inhabitants of Mervonetshire*, 6 A. & E. [N. S.] 343; *Queen* v. *Inhabitants of Brecon*, 15 id. 813; *Queen* v. *Smith*, L. R., 8 Q. B. 146; *Queen* v. *Justices*, L. R., 10 Q. B. 579; *S. V. W. W. Co.* v. *San Francisco*, 22 Cal. 434; *Wood* v. *Hustis*, 17 Wis. 416; *Sika* v. *C., etc., R. Co.*, 21 id. 370; *Crosby* v. *Smith*, 19 id. 450; *Griswold* v. *A. D. Co.*, 21 Barb. 226; *Quinn* v. *Mayor, etc.*, 63 id. 596; 53 N. Y. 637;

Laws of 1840, chap. 386; Code Civ. Pro, § 303; Laws of 1833, chap. 271, § 6; Laws of 1837, chap. 460, § 7; *Western v. Romaine*, 1 Bradf. 37; *Wilcox* v. *Smith*, 26 Barb. 316, 330; *Devin* v. *Patchin*, 25 How. 5; 26 N. Y. 441, 448; *Matter of St. John*, 6 Hill, 356; *People* v. *McEwen*, 8 Abb. 359; *People* v. *Colborne*, 20 How. 380; *People* v. *Lewis*, 28 id. 159; Code Civ. Pro. § 471.) The defendant has never acquired a legal residence in the metropolitan police district, and has, therefore, never qualified himself to hold the office to which he was appointed. (1 R. S. 101, 102, §§ 10–15, p. 345, § 11; Id. [7th ed.] 122, 348, 349, 370, 386, §§ 10–17, 34, p. 817, § 11; 2 id. 989, § 5; *People* v. *Morrill*, 21 Wend. 563, 577; *Hannon* v. *Grizzard*, 89 N. C. 115, 120; *State* v. *Aldrich*, 14 R. I. 171; *Matter of Bagley*, 27 How. 151; *Gildersleeve* v. *Board of Ed.*, 17 Abb. 201; Const. art. 2, § 1; *Silvey* v. *Lindsay*, 107 N. Y. 55, 61; *Crawford* v. *Wilson*, 4 Barb. 505, 520, 522; *Roberts* v. *Cannon*, 4 Dev. & B. 256, 269; *Vanderpoel* v. *O'Hanlon*, 53 Iowa, 246, 248, 249; *Chase* v. *Miller*, 41 Penn. St. 404, 420, 421; *Bell* v. *Pierce*, 51 N. Y. 12; *Dupuy* v. *Wurtz*, 53 id. 561, 562, 566; *Isham* v. *Gibbons*, 1 Bradf. 69, 70; *Merrill* v. *Morrissett*, 76 Ala. 433; *People ex rel.* v. *Surrogate's Court*, 36 Hun, 220, 221; *Kennedy* v. *Ryall*, 67 N. Y. 386; Jacobs on Domicile, §§ 72, 75, 86, 92, 114, 115, 125, 135, 136, 151, 181, 182, 310, 314, 365, 393–396, 435; *Fisk* v. *C., etc., R. R. Co.*, 53 Barb. 472, 474; *Woodworth* v. *S. P., etc., R. R. Co.*, 18 Fed. Rep. 283; *Blair* v. *W. F. Sem.*, 1 Bond, 578, 580; *U. S.* v. *Thorpe*, 2 id. 340; *Kellogg* v. *Oshkosh*, 14 Wis. 623, 628; *Hairston* v. *Hairston*, 27 Miss. 704, 721; *De Bonneval* v. *De Bonneval*, 1 Curteis, 856, 864; *Lauderdale Peerage*, L. R., 10 App. Cas. 692, 758; *Mitchell* v. *U. S.*, 21 Wall. 350, 353; *Shelton* v. *Tiffton*, 6 How. [U. S.] 163; *Com.* v. *Emerson*, 1 Pearson, 204; *Dauphin Co.* v. *Banks*, Id. 40; *Jopp* v. *Wood*, 2 De G., J. & S. 616; *Munro* v. *Munro*, 7 Clark & F. 842; *West's Case*, 6 Jur. [N. S.] 831; *Gillis* v. *Gillis*, Irish Rep. [8 Eq.] 597; *Capdevielle* v. *Capdevielle*, 21 L. T. [N S.] 660; *Hodgson* v. *De Beauchesne*, 12 Moore P. C. C. 285; *In re Capdevielle*, 2 Hurl. & C. 985;

*White* v. *Brown*, 1 Wall. Jr. 217 ; *Sieur Garengeau's Case,.* Verb Domicile No. 33.) There being no conflict of evidence the question of domicile or legal residence was one of law, and the court should have directed a verdict in favor of the plaintiff. (*Crawford* v. *Wilson*, 4 Barb. 505, 518 ; *Silvey* v. *Lindsay*, 107 N. Y. 55 ; *Pennsylvania* v. *Ravenel*, 21 How. [U. S.] 103 ; *People* v. *Cook*, 8 N. Y. 67, 75 ; *Tomer* v. *Meeker*, 25 id. 361 ; *Appleby Case*, 54 id. 253 ; *Graham Case*, 87 id. 69, 78 ; *Kelly* v. *Burroughs*, 102 id. 93 ; *Corning Case*, 44 id. 577 ; *Cagger* v. *Lansing*, 64 id. 427 ; *Neuendorf Case*, 69 id. 392, 393 ; *People* v. *Wiley*, 3 Hill, 194, 214 ; *Shorter* v. *People*, 2 N. Y. 199, 203 ; *Fonner* v. *Johnson*, 78 id. 617 ; *Ward* v. *Kilpatrick*, 85 id. 414 ; *Thorne* v. *Turck*, 94 id. 90, 97 ; *Clover Case*, 101 id. 277, 281 ; *People* v. *Carpenter*, 102 id. 239, 244 ; *White Case*, Id. 660, 664 ; *People* v. *Buddensieck*, 103 id. 488, 500 ; *Teets Case*, 106 id. 651 ; *Bohn Case*, 114 id. 297, 300 ; *Horn* v. *Pullman*, 72 id. 270, 279 ; *Kirtz* v. *Peck*, 113 id. 222 ; *Houlenbeck Case,* 16 N. Y. S. R. 786 ; *Boutle* v. *Krebs*, 23 id. 381.) The court had the right to determine the practice on the trial in reference to the time of interposing challenges. (*People* v. *Carpenter*, 102 N. Y. 239 ; *Maloy* v. *Pelham*, 4 N. Y. S. R. 828 ; *Cox* v. *People*, 80 N. Y. 500 ; *Spies* v. *Illinois*, 123 U. S. 131 ; *People* v. *O'Neil*, 109 N. Y. 251, 252.) It also properly overruled the challenge against Clowrey on the special ground that he was not well informed. (*People* v. *Carolin*, 24 N. Y. S. R. 595 ; *People* v. *Carpenter*, 102 N. Y. 239 ; *Ochs* v. *People*, 124 Ill. 401.) There was no error committed in rejecting the entire affidavit of the defendant in explanation of testimony on the cross-examination. (*People* v. *Dimick*, 107 N. Y. 14, 25 ; *Rouse* v. *Whited*, 25 id. 170.) There was no error committed in ruling that the plaintiff had the affirmative of the issues in the case. (Abb. Trial Brief, 30–36.)

DANFORTH, J. The act of April 29, 1863, establishing a quarantine, and, among other things, defining the qualifications of certain officers who should execute the powers and perform

the duties created by it (Laws of 1863, chap. 358), made it the duty of the governor to appoint " three discreet persons, citizens of this state, who shall be residents of the ' Metropolitan Police District,'" as commissioners of quarantine, who should hold their offices for three years and until their successors were appointed and qualified, and required him every three years thereafter, and as often as vacancies should occur by reason, among other things, of "removal from the said district." to appoint persons of like qualifications to fill the places thus made vacant. (id. § 54.) Under this act commissioners were, from time to time, appointed, and on the 29th of January, 1880, a vacancy existing, the defendant, Thomas C. Platt, was appointed quarantine commissioner. He entered upon the duties of his office and was in the exercise of its functions when this action was instituted for his removal upon the ground that he was not, at the time of his appointment, a resident of the "Metropolitan Police District," or of any territory included therein, but was a resident of the county of Tioga, which at no time was or had been part of said district.

Upon trial of the issues formed in the action, the jury found for the plaintiff, and, in answer to a specific question submitted to them, said, that "the defendant did not have a legal residence and domicile at the time in question in the metropolitan police district," thus sustaining, as the plaintiff claims, the ground upon which the action was brought. On the other hand, the defendant contends that his actual residence, at the time of his appointment, was in the city of New York, a place within the specified district, that it continued to be there during his whole incumbency, and that this was enough although his domicile remained in Tioga county and he there exercised all the rights which pertained to it. The appeal, therefore, presents a single question, and that is to be answered by ascertaining the true construction of the statute. (*Supra*).

Before going to that it will be well to rehearse the facts on which the verdict turned. From the allegations in the answer,

born in the village of Owego and county of Tioga, and always
resided there down to 1878. He sold his family residence in
Owego in the spring of 1878, and has never kept house any-
where since. After selling his house he and his wife boarded
at a hotel in Owego until September, 1879. He then changed
his boarding-house to the city of New York, but retained a
room in the Owego hotel, hiring it by the month, until Septem-
ber, 1882, occupying it on occasional visits during that period.
After going to New York he and his wife occupied rooms in
a boarding-house until the fall of 1880, when they changed
their quarters to the Fifth Avenue Hotel, and have remained
there, except during the hot season of each year, ever since.
It was while they were boarding at the corner of Fifth avenue
and Forty-first street, in the city of New York, that the
defendant received the appointment of commissioner of
quarantine. He has been, since April, 1879, secretary or
president of an express company in New York, and during
the same period president of a bank in Owego, and president
of a railroad company, having its head-quarters at Auburn.
He has also been, since October, 1883, a partner in a manu-
facturing firm carrying on business at Owego. He also,
during the same period, nearly every year, and whenever he
exercised the right anywhere, at local, state and national
elections, voted at Owego. On one occasion, in July, 1880,
about five months after he had qualified as and assumed the
office of quarantine commissioner, he offered to vote at a
special election in Owego, called for the purpose of voting
money for school purposes. His right to vote was challenged
on the ground that he was not a resident of the village, and
he took the general oath and voted under the challenge. He
thus declared, under oath, that he had resided in the county
of Tioga for four months, and in the village for thirty days prior
to that election. About a year later, in September, 1881, he
again made oath before a notary public, in acknowledging
the execution of a deed, that he then resided in the village of
Owego."

Upon the trial he also testified that "he never intended to

change or abandon his domicile in Owego." He further testified that he adhered to this view down to the trial, and "that during all these years he had intended to retain his domicile in Owego."

Concerning these matters both parties agree. It is thus obvious that the specific question was properly answered by the jury, and we have now to inquire whether that finding warrants the judgment which followed.

The office is a statutory one, and the act which created the patronage or power to confer the trust prescribes particular circumstances without which a person is not eligible to its enjoyment. He must be "a citizen of the state," and he must also be "a resident of the metropolitan police district," a well defined, but comparatively small portion of the state. A person so situated is put in a certain relation to the district, and, as a resident, is distinguished from a stranger. The relation is one which has a legal sanction, and, in some cases, secures its possessor a settlement and pauper privileges under the poor laws or under the election laws a right to vote. And in all cases where a statute prescribes "residence" as a qualification for the enjoyment of a privilege or the exercise of a franchise, the word is equivalent to the place of domicile of the person who claims its benefit.

The defendant offers his vote in Tioga county because he is a resident of that county, and of the election district where it is offered; it is received under the provision of law, that a person so situated shall be entitled to the privilege. And his absence from that county, however long, so that it is temporary, and not in abandonment of his home, will not deprive him of his residence, though his absence extend through a series of years. Nor can his actual presence during that time in another district entitle him to the enjoyment of another franchise for which only a resident of that district is, by law, qualified. For the latter purpose he is, in contemplation of law, as much a stranger in the "Metropolitan Police District," as for the other purpose he is at home, or resident in Tioga. The inquiry suggested by the statute is a simple one, easily determined by

the appointing power when the legal home of the candidate is found, and it would be productive of great confusion and difficulty if its answer was made to depend upon his place of business, or its nature, or amount, or the degree of attention which he personally gave to it.

We entertain no doubt as to the true meaning of the statute, and in view of the extended discussion given to the question in the Supreme Court (50 Hun, 454), we think it necessary only to add that we agree in the conclusion at which that court arrived.

The judgment appealed from should, therefore, be affirmed.

All concur.

Judgment affirmed.