(4 App. Div. 301.)

## In re DIMOCK.

(Supreme Court, Appellate Division, Third Department.  April 14, 1896.)

**1. INSOLVENCY—DISCHARGE—DOMICILE OF DEBTOR.**

The provision of Code Civ. Proc. § 2150, that an application for the discharge of an insolvent debtor must be addressed to the county court of the county in which he resides, means that the debtor must have his "domicile" in such county.  32 N. Y. S. 927, affirmed.

**2. SAME—PROOF OF DOMICILE.**

On an application for the discharge of an insolvent debtor, it appeared that for a number of years he had been a member of a fishing club which owned a large tract of land, with a clubhouse, in Ulster county; that he and his family, as did also other members of the club, spent the summer months at the clubhouse; that during the balance of the year he lived at Elizabeth, N. J., in a house owned by his wife; that, in a deed executed a few years before, he described himself as residing at Elizabeth, and when at hotels he registered himself as of that city; and that he testified in a legal proceeding that he resided there. *Held*, that the debtor did not reside in Ulster county, within Civ. Code, § 2150, providing that an application for discharge must be addressed to the county court of the county in which the insolvent resided.  32 N. Y. S. 927, affirmed.

**3. SAME—CONSENT OF CREDITORS—LEGALITY OF CLAIMS.**

One who incurs loss in an attempt to assist another in effecting sales of corporate stock, by fraudulently creating an appearance of an active demand for the stock at fictitious prices, cannot recover therefor from such other, as such transactions are contrary to public policy; and therefore a claim for such loss is not a debt, within Code Civ. Proc. § 2152, providing for the discharge of an insolvent debtor where the creditors having two-thirds of all the debts owing in good faith consent to the discharge.

**4. SAME—DEBTS BARRED BY LIMITATION.**

The fact that a debtor has waived the statute of limitations, in order to qualify holders of demands to give their consent to the discharge, may be considered, in determining whether the consents were given by persons to whom petitioner was justly and truly indebted.

**5. APPEAL—DISCRETION OF COURT.**

On an application to the county court for the discharge of an insolvent debtor, it is discretionary with the court, after the testimony was declared closed, to allow the consenting creditors to admit further testimony.

Appeal from Ulster county court.

Application by Anthony W. Dimock, an insolvent debtor, for his discharge from his debts.  From an order dismissing the petition, and from an order granting the motions of the attorney for the Farmers' Loan & Trust Company, opposing creditors, to be allowed to introduce further evidence (32 N. Y. Supp. 927), petitioner appeals.  Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

George H. Hart, for appellant.

David McClure and A. H. Van Brunt, for respondents.

LANDON, J.  The learned county judge dismissed the application, holding, in effect:  (1) That the petitioner, at the time of making the petition, was not a resident of Ulster county or of the state of New York.  Code Civ. Proc. § 2150.  (2) That he did not annex to his petition the consents to his discharge of his credit-

ors, having debts owing them in good faith, amounting to not less than two-thirds of all the debts owing by him to creditors in this country.  Id. § 2152.  (3) That it did not appear that he was indebted to the consenting creditors in a sum which amounted to two-thirds of all his debts.

That the petitioner was not a resident of Ulster county at the time he presented his petition, but was a resident of Elizabeth, N. J., we think was abundantly established by the evidence.  Indeed, the only foundation for his claim of a residence in Ulster county was the fact that for several years, during a considerable portion of the summer months, and sometimes during a portion of the spring and autumn months, he temporarily inhabited a clubhouse or "cabin," as he himself sometimes styled it, in a solitary region of the Catskill mountains.  He and four associates owned the clubhouse, and a considerable parcel of the wilderness about it.  It seems to have been a retreat that suited the petitioner's notions, and perhaps his needs of rest, recuperation, and enjoyment.  But the evidence satisfactorily shows that, during the 10 years before he presented his application, and at the time of presenting it, his actual domicile and home residence was in Elizabeth, N. J.  It was there—first, in a house on Anna street, and later in another on Broad street; both houses being ample and comfortable mansions—that he and his wife and family, with their servants, lived and had their home.  Whenever, wherever, and however absent, the petitioner had the intention of returning there.  It is difficult to regard seriously the proposition that his actual residence was in his mountain retreat.  That was simply a sojourning place, between which and his residence he flitted in favorable seasons.  He presented his petition October 2, 1892, and it is pressed upon us that, immediately preceding and up to that date, his stay in the mountains had been nearly continuous for about three months.  That fact does not strike us with much force, in view of his apparent stay there for the purposes of this case, and the absence of his intention to abandon his home in Elizabeth.  The learned counsel for the petitioner presents an able and elaborate argument to the effect that, for the purposes of insolvency proceedings, the residence required by the Code as a condition of the jurisdiction of the county judge does not necessarily imply the place of the petitioner's domicile.  In the case of People v. Platt, 117 N. Y. 167, 22 N. E. 937, which dealt with the meaning of "residence" as an essential to eligibility to office, it was held that the idea of domicile was embraced.  It may be that, under the statute, a Chinese merchant, whose domicile is in Hong Kong, but his business residence in New York, could properly apply for a discharge in the latter place.  Ex parte Wrigley, 4 Wend. 602, affirmed 8 Wend. 134; De Meli v. De Meli, 120 N. Y. 485, 491, 24 N. E. 996; Hart v. Kip (N. Y. App.) 42 N. E. 712.  Certainly, the petitioner's business residence was not in Ulster county.  We think, in view of the petitioner's residence and domicile in New Jersey, and of the kind and place of his sojourns in this state, that the county judge properly held that he was not a resident of

the state or of Ulster county, within the meaning of sections 2149 and 2150 of the Code.

In the schedule annexed to his petition, the petitioner claims that the sums owing the consenting creditors aggregate $921,-406.97, and the sums owing to nonconsenting creditors, including disputed claims and debts claimed to be barred by the statute of limitations, aggregate $416,452.06; thus showing consents as to more than two-thirds. Among the consenting creditors are John B. Yale and John R. Hegeman. The contesting creditors challenged these two claims, and the county judge, in effect, held that it did not satisfactorily appear that the petitioner was "justly and truly indebted" to them. Code, § 2174. Mr. Yale, in his consent, alleges that there is due him from the petitioner $333,813.62, being for "money loaned on security of stocks and bonds, and cash advanced at various times prior to May 16, 1884, for purchases of shares of stocks, and bonds, and shares, with interest." Mr. Hegeman, in his consent, alleges that there is due him from the petitioner $171,212.78, being for "cash advanced at various times prior to May 15, 1884, on pledge of 1,700 shares of Bankers' & Merchants' Telegraph Company stock, with interest at six per cent. to October 10, 1884, less proceeds of sales of said shares," with interest on balance to May 1, 1893; also, that said indebtedness arose from advance of cash made, or caused to be made, by said deponent "for the purpose of carrying 1,700 shares of Bankers' & Merchants' Telegraph stock for account of said Anthony W. Dimock, as per statement herewith." The total of these two alleged debts is $505,026.11, and, if disallowed, the requisite two-thirds would not be shown to have consented.

The evidence showed the following state of facts: Dimock & Co. were the promoters and principal stockholders of the Bankers' & Merchants' Telegraph Company. The petitioner was the president of the company, Yale, its secretary and treasurer, and Hegeman, vice president. The nominal capital of the company was $3,000,000, but the amount of stock actually paid for and issued much less. To induce purchases of this stock, it was necessary to keep up its price, and create an apparently active market for it. We quote from the brief of petitioner's counsel:

"It was materially to his interest that the stock of the corporation should be enhanced in value, which would depend upon the demand for the stock by purchasers and investors. Every purchase and investment in the stock increased the demand for it, and, consequently, its value, or, at least, its market price, and every subscription to the stock of the company added to the cash in its treasury available for the extension of its lines, and the improvement of its property."

Yale testified that:

"Every thousand shares bought directly by me, or caused to be bought by my brother or friends, amounted to a subscription to the capital stock of $100,000, and over."

Dimock asked both Yale and Hegeman to buy and sell it in the market, and carry it, and promised to indemnify each of them

against loss. He placed 1,000 shares of the stock in Yale's hands, as his margin or security, to which Yale could add in his executory contracts to buy or sell the additional shares each contract called for. Hegeman appears to have advanced whatever margin above the shares themselves his contracts required. Dimock & Co.'s failure in 1884 practically destroyed the market value of the stock, and hence Yale's and Hegeman's respective losses. Following his failure, Dimock & Co. made an assignment, as partners and as individuals. In the schedules made under the assignment, neither of these claims is mentioned, except that Mr. Yale there appears as a creditor for $30,000. Hence, there is some ground for the inference that the debts now stated were not then considered as existing or valid. This assignment was set aside by the judgment of the court. By comparing the facts respecting their origin with the statement of their nature, made in the consents by the respective claimants, a discrepancy in statement appears. Yale's statement in his consent is that his claim is "for money loaned on security of stocks and bonds, and cash advanced at various times." Hegeman's is "for cash advanced at various times on pledge of the Bankers' & Merchants' Telegraph Company stock." The fact in both cases appears to be that the losses accrued in an attempt to assist Dimock to foist upon innocent purchasers the stock of the telegraph company, by falsely creating an appearance of an active demand for the stock at fictitious prices. Yale says he bought, or agreed to buy, 3,000 shares at about $1.30. The fact that its price gradually fell to one cent, when Dimock could no longer sustain it, is instructive as to its intrinsic value. Dimock, Hegeman, and Yale were officers of the company, and presumably knew the worthlessness of the stock. Such transactions are contrary to public policy, and the party losing by them is left remediless by the courts. Nellis v. Clark, 4 Hill, 424. The Code requires that the consenting creditor must state the nature of the demand, with the general ground or consideration of the indebtedness. Code, § 2160. Under the circumstances, it was open to question whether the real nature of the demand, with the general ground of the indebtedness, was not suppressed. Besides, these demands accrued in 1884, and are apparently barred by the statute of limitations. There is no evidence to the contrary, except the fact that the petitioner classes them as valid. We need not hold that the insolvent debtor cannot waive the statute. Undoubtedly, he can do so, so far as he, himself, is concerned.

Murray v. Judson, 9 N. Y. 73, was a case in which the general assignor for the benefit of creditors preferred his assignee, in whose favor he had confessed judgment, upon an alleged usurious debt, and another judgment creditor sought to set the assignment aside. The court held that the assignor might make such a preference, but said: "We are not asked to determine whether a provision for a usurious debt may not, in certain cases, be evidence more or less cogent of a fraudulent intent on the part of the debtor." In this case the waiver is for the benefit of the petitioner. He thus resurrects uncollectible demands, and it is inferable from

the evidence that his waiver of the statute is the consideration of the consents given by their holders. Thus the consents are at the expense of his nonconsenting creditors, and, if valid, the petitioner thus may punish the nonconsenting, and reward the consenting, by admitting the latter to participation in the fund, from which they otherwise might be excluded. The fund in this case is but $187, but there may be a satisfaction other than pecuniary in coercing nonconsenting creditors to resort to it.

We think that if the statute of limitations is waived in order to qualify the holder of the demand to give his consent, and insisted upon in order to exclude from the schedule of his debts other creditors, who are thus not permitted to be heard, as will hereafter appear, the court, in determining whether the consents were given by persons to whom the petitioner is justly and truly indebted, may, in case of doubt upon the merits, consider that fact, among others. In view of the facts referred to, we think the county judge very properly held that it did not satisfactorily appear that the petitioner was justly and truly indebted to Yale or Hegeman, and, therefore, that the requisite consents were not given.

The petitioner claims that, of the debts stated in his schedule of nonassenting creditors, the statute of limitations bars $188,422.99. Since the holders of these debts are parties to this proceeding, the county judge had jurisdiction so to find, provided the issue was presented to them. In his schedule, the petitioner, in his statement of each of the debts composing the above aggregate, added the words, "believed to be barred by the statute of limitations." Code, § 2162, requires the petitioner to annex to his petition a schedule, containing "a full and true account of all his debts." Now, he may owe debts as to which he can avail himself of the defense of the statute of limitations, and, although the word "account" in the section is probably used in its commercial sense, it is fair, we think, to construe it as also embracing such an account of statement as will show the debtor's defenses to the debts which he sets forth. We think the issue was sufficiently tendered to the objectors to the discharge. Whether, upon final distribution, the holders of the debts, who did not appear, would be barred from participation in the fund, we need not here consider. The county judge, however, makes no finding upon these claims, except as it is implied in his order dismissing the proceedings on the merits. If we retain these debts among the nonconsents, the petitioner's case is hopeless. But, assuming that they should be excluded, then we have nonassenting creditors to the amount of $228,029.07.

```
Total debts in petitioner's schedule, good and bad.............  $1,337,859 03
Deduct Yale's and Hegeman's....................  $505,028 11
Nonconsenting barred .........................   188,914 29
                                                -----------     693,942 40

Total debts  ..............................................  $  644,906 63
Of which one-third is.......................................     214,969 21
          two-thirds........................................     429,938 42
Consents  ..................................................     416,378 76
```

It is proper to state that the petitioner disputes, on other grounds, some of the demands of the nonconsenting creditors, and claims a release as to the demands of Opdyke & Co., obtained after these proceedings were commenced, which, if allowed, would change the balance, as above stated, in his favor. If we go into all these details upon both sides of the account, we are satisfied that the deficiency of consents will appear much larger. Thus, most of the consents were obtained upon the promise of the petitioner that, if he obtained his discharge, he would devote five years of his life to the benefit of his consenting creditors. Code, § 2160, requires that the consenting creditor must make affidavit that he has not received from the debtor any gift or reward of any kind, upon an express or implied understanding that he should consent to the discharge. Section 2163 requires the affidavit of the petitioner that "I have not paid, secured to be paid, or in any way compounded with any of my creditors, with the view fraudulently to obtain the prayer of my petition." We need not hold that the petitioner's promise, given upon such an understanding, was a valuable gift, but it seems to be tampering with the good faith which the statute requires, and we doubt whether consents thus acquired should be allowed. Again, A. W. Dimock & Co. failed in April, 1884, with liabilities to the amount of $2,600,000, secured, to some extent, by collaterals. Comparing the schedules filed in connection with their assignment in that year with the schedule filed with the petition in this proceeding, and there appears to be omitted from the latter schedule debts to the amount of $1,248,182.59, excluding interest, and deducting for debts apparently duplicated, because of the same debt being included in different accounts. The petitioner here presents releases, of various kinds, of debts to the amount of $1,024,233.04, leaving the total omitted from his schedule in the proceeding $223,949.55. It is urged that these debts are barred by the statute of limitations, but, as they are omitted from the schedule, and the creditors holding them are not heard, this cannot be determined. It does not appear that these debts have been paid or released. If we add them, even without adding interest to the nonconsenting side of the account, the deficiency of consents is greatly increased. Moreover, of the demands thus released and above deducted, $247,068.75 were released by instruments, most of which were drawn as follows:

"Whereas, an action has been commenced in the supreme court of the state of New York by Henry M. Potter, assignee of Anthony M. Dimock and Arthur V. Dimock, against the United States National Bank and others, for the purpose, among other things, of recovering the sum of $3,688,860.00, or thereabouts; and whereas, it is proposed to apply the proceeds of said action to the liquidation of the debts of A. W. Dimock & Co., as far as possible,—now we, the undersigned, in consideration of receiving our proportionate share of the net results of said liquidations, do hereby agree to release the said Anthony W. Dimock and Arthur V. Dimock from all claims we hold against them, or either of them."

These were not absolute releases, but conditional agreements to release. If we add these creditors to the nonconsenting list, the deficiency of consents becomes hopelessly irretrievable.

We judge from the testimony that the asset alleged in the action against the United States National Bank is not one upon which large immediate realization is expected. The assignment of the cause of action precedes the petition in this proceeding more than two years, and therefore is not within the condemnation of section 2173, though it is not clear that it is not within that of section 2163, hereafter quoted in part. The use which has been made of the action to obtain releases and agreements to release, and to give color to the claim of an offset against the judgment of the bank, which appears as an objecting creditor, adds another questionable feature to the case.

In 1873 the petitioner went through bankruptcy, and, upon obtaining his discharge, began business again. He then began to put aside securities for the benefit of his wife and family, but he retained the possession and control of them. This fund amounted to $200,000 in 1884, at the time of his assignment. It does not appear that, previous to his insolvency in 1884, this trust fund had in any way been delivered to his wife, or to any trustee for her. Afterwards it was delivered to a trustee for her benefit. Of course, this so-called "trust fund" was Dimock's property (Wadd v. Hazelton, 137 N. Y. 215, 33 N. E. 143), and ought to have been applied to the benefit of his creditors, and perhaps would have been applied, if the assignment had not been set aside. But, in order to set it aside, one Wheeler, apparently in the interest of the petitioner, was made the nominal purchaser of a large number of alleged demands against the Dimocks. He sued upon them, obtained judgment for $144,070.50, and then brought an action in the nature of a creditors' bill to set aside the assignment, obtained judgment, had a friendly receiver appointed, and then sold his judgment to Mrs. Dimock's trustee for one dollar, and then the receiver let the trustee keep the trust fund. At any rate, he has kept it, and it has supplied Dimock and his family ever since. Code, § 2163, requires the petitioner to make this affidavit:

"I have not, at any time, or in any manner whatsoever, disposed of or made over any part of my property * * * for the future benefit of myself or my family, or disposed of or made over any part of my property in order to defraud any of my creditors."

He did make such an affidavit, but his view of the facts was probably different from that which we entertain.

The county judge did right in dismissing the application on the merits.

Some time after the testimony was declared closed by the respective counsel, and the county judge was holding the case under consideration, the consenting creditors moved and obtained an order to admit further testimony. An appeal was also taken from that order. We think that this order was clearly within the discretion of the county judge.

Orders affirmed, with costs and disbursements. All concur.