(68 Misc. Rep. 516.)

### PEOPLE ex rel. DISTLER v. McGUIRE et al.

(Supreme Court, Special Term, Queens County.   August, 1910.)

1. COURTS (§ 58*)—ATTENDANTS—RESIDENCE.

Court attendants in the city of New York are within Public Officers Law (Consol. Laws, c. 47) § 3, providing that persons holding a civil local office must be residents of the political subdivision or municipal corporation of the state for which they shall be chosen.   Though Greater New York Charter (Laws 1901, c. 466) § 1394, providing that clerks and other officers appointed by city magistrates shall be residents of the city and of the divisions in which they were appointed, has been repealed, only persons residing in a district can be appointed court attendants to serve in such district.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 201–203; Dec. Dig. § 58.*]

2. MANDAMUS (§ 75*)—TO CIVIL SERVICE COMMISSION—COURT ATTENDANTS—RESIDENCE.

A person eligible for court attendant in the borough of Queens is entitled to a writ of mandamus commanding the municipal service commission to certify to the city magistrates of the First division only such persons eligible therefor as reside within the boroughs of Manhattan and the Bronx, and to the city magistrates of the Second division those residing within the boroughs of Brooklyn, Queens, and Richmond.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 75.*]

Application by the People, on the relation of John Distler, for writ of mandamus against John C. McGuire and others and the City of New York.   Writ granted.

John B. Merrill, for the motion.

Archibald R. Watson, Corp. Counsel (James D. Bell and Sanders Shanks, of counsel), opposed.

PUTNAM, J.   The relator is now upon the eligible list for court attendant in Queens borough.   He seeks a writ of mandamus to the municipal civil service commission as to its lists of persons eligible to be certified for appointment as court attendants under the new act in relation to the inferior criminal courts in the city of New York. Laws 1910, c. 659.

At present civil service regulation 9, subd. 5, provides:

"Candidates for the position of court clerk, stenographer or attendant in the City Magistrates' Court, or in the Municipal Court, must be residents of the borough or other prescribed geographical division in which the court in which they are to be appointed is situated."

The former Magistrates' Courts were under chapter 20, tit. 3, §§ 1390–1404, of the city charter (Laws 1901, c. 466).   While the Legislature attempted to unite the Court of Special Sessions, it did not do so with the Magistrates' Court.   Indeed, the appeals therefrom are so diverse that a complete consolidation could hardly be made.   In the case of city magistrates in the county of New York the appeal lies to the Court of General Sessions, but in Brooklyn, Queens, and Richmond the appeal lies to the County Courts.   The city magistrates have been in two divisions; the first embracing the boroughs of Manhattan

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and the Bronx, and the second including the boroughs of Brooklyn, Queens, and Richmond.   City Charter, § 1390.

The new act (Laws 1910, c. 659) emphasizes this separation.  They are referred to as the City Magistrates' Courts, and are organized into two distinct judicial divisions.  Each has its chief magistrate, who must be a resident of the division in which he is appointed.  Section 51. Each division makes its own rules, which shall be uniform as far as practicable in all courts of the division.  Section 59.  The jurisdiction of the night courts and of the domestic relations courts "shall be coterminous with that of the division or borough in which the same are held."  Section 70.  A magistrate's court has jurisdiction only of infractions committed within the county in which it is located.

Under the city charter any city magistrate could hold court for another in case of illness or inability to sit (section 1403), but the new law does not provide for the transfer of a magistrate out of one division into another.  The magistrates in the First division have no voice or concern in the affairs of the Second division or in the personnel of its court attendants.  Separate and independent action by each board is provided for as to appointment of court attendants (section 56) and in the power of removal (section 103).  On September 1st the uniformed police are not to act as attendants or court officers, as such services are to be performed by court attendants appointed by the boards of city magistrates.  Section 109.

The charter heretofore provided that clerks and other officers and employés appointed by a board of city magistrates, or by any magistrate, shall be residents of the city of New York and of the divisions in which they were appointed, and, in the Second division, they shall each be a resident of the borough from which they are appointed. Section 1394.  The new act has no such restriction, and section 1394 of the charter is included in the repealing clauses of the new act.

The municipal civil service commission on July 19th was advised by the acting corporation counsel that:

"In view of the fact that there is no provision in the new act requiring court attendants, court stenographers, interpreters and assistant court clerks of the Magistrates' Court to be residents of any particular subdivision of the city, and in view of the repeal of section 1394 of the revised charter, I advise you that these employés should be appointed from the 'general list.'  From the provision of the act before quoted, that the certificates issued by the chief city magistrate upon the appointment of a chief or other clerk of the Magistrates' Courts shall state 'the division from which' the appointment is made, an inference might be drawn that the appointee must be a resident of the division for which he is appointed.  However, I do not think the inference sufficiently strong to warrant advising you that assistant court clerks must be appointed from the division list.  The courts are open to any one who may feel aggrieved by your failure to give him the benefit of such a doubtful right.

"In giving you the advice that I have I am not unmindful of the provision of your regulations contained in regulation 9, which states that: '(5) Candidates for the position of court clerk, stenographer or attendant in the City Magistrates' Court or in the Municipal Court must be residents of the borough or other prescribed geographical division in which the court in which they are to be appointed is situated.'  I assume, however, that this regulation was based upon the provision, as far as it relates to the Magistrates' Courts, contained in section 1394 of the Greater New York Charter, and that there will, in consequence of the repeal of said section, be no further necessity for such a provision in relation to such courts."

The relator, on August 9th, demanded of the commission that, instead of certifying for appointments as advised by the corporation counsel from the general list, they be certified according to the divisions, namely, for the First division, embracing the boroughs of Manhattan and the Bronx, those residing in said boroughs only; and for the Second division, embracing the boroughs of Brooklyn, Queens, and Richmond, only those residing in said last-named boroughs. Such a principle is recognized in the civil service law. Appointments to the state service outside of Albany are as far as practicable to be made from residents of the judicial district including such locality. Section 14. Even in the case of unskilled laborers in cities, separate registration lists may be made for each district or locality. Section 18. But in the city of New York such separate lists are to be according to boroughs, which are not to be subdivided (People ex rel. Melledy v. Shea, 73 App. Div. 232, 76 N. Y. Supp. 679), and a bridge tender on the Manhattan list cannot be certified for appointment in the Bronx (People ex rel. Coyne v. Shea, 73 App. Div. 239, 76 N. Y. Supp. 683).

The requirement that local offices shall be filled by residents of the locality is as old as the Revised Statutes. Section 3 of the public officers law (Consol. Laws, c. 47) declares:

"No person shall be capable of holding a civil office who shall not at the time he shall be chosen thereto be of full age, a citizen of the United States, a resident of the state, and, if it be a local office, a resident of the political subdivision or municipal corporation of the state for which he shall be chosen, or within which the electors electing him reside, or within which his official functions are required to be exercised."

This is felt so essential to a proper discharge of public duties that the courts have emphasized residence by the stronger meaning of domicile, so that anything less than actual domicile on the part of the incumbent leads to an ouster from the office. People v. Platt, 117 N. Y. 159, 22 N. E. 937. There are here continued two independent geographical divisions of the new Magistrates' Courts. Such division for administration of criminal law cannot be an entire municipality, but a division based on county and borough boundaries.

If the attendants to be appointed by the separate boards of city magistrates are public officers, it follows they must be resident within the respective divisions in which their official functions are required to be exercised. Their position is an adjunct to the court, an office created by law in which the incumbent, for the dignity of the court, must necessarily be regarded as a public officer judicially appointed. In the same view, a Supreme Court crier has been held to be a public officer whose salary could not be reduced by the board of estimate. Ricketts v. Mayor, 67 How. Prac. 320. In Rowland v. Mayor, 83 N. Y. 372, 376, the salary of a court attendant had been raised while in office; the city declined to recognize the advance because as a public officer his salary could not be increased during his incumbency. This position was sustained; the Court of Appeals saying that a court attendant "is to perform such duties as are by it required to be performed. * * * Duties are in aid of the proper business of the court, * * * to be present at its sittings, to execute its commands, secure due order in its proceedings, * * * and all are as

necessary as the duties intrusted to its clerks or crier. * * * He owes in like manner a duty to it, and his employment is one in which the public are interested; its proper exercise requires capacity, diligence and attendance." Hence, notwithstanding the repeal of charter section 1394, the relator and the court attendants to be appointed are subject to the provisions of section 3 of the public officers law, and must be residents of the respective divisions in which they are to serve.

The contrary view leads to practical difficulties in the case where a large number of appointments are to be made, as will be necessary about September 1st. If the two divisions in their distinct boards are to appoint, necessarily each set of division appointments must be made from a list of eligibles. If, however, a single general list with the same names is submitted in duplicate to each board, that board cannot appoint with certainty an attendant therefrom without risk that such name may have already been selected by the other board. Such appointments, if attempted in this way, would require a priority to be assumed by one board or some joint conference in appointing, neither of which is according to the purpose of the new statute. Such results cannot be imposed on the magistrates merely by implications from the repeal of section 1394 of the city charter.

The long-established practice of the municipal civil service commission in preparing separate lists leads to no such difficulty, is clearly in accordance with the general law and the rights of those to be appointed, and is to be followed until a contrary purpose is clearly evinced by the Legislature.

The relator is, therefore, entitled to a writ commanding the municipal civil service commission to certify for the position of court attendant to the board of city magistrates of the First divison only such persons eligible therefor as reside within the boroughs of Manhattan and the Bronx, and to the board of city magistrates of the Second division only such persons eligible therefor as reside within the boroughs of Brooklyn, Queens, and Richmond.

Ordered accordingly.