(172 App. Div. 274)

## In re ROONEY et al.

(Supreme Court, Appellate Division, Third Department.   May 18, 1916.)

1. ELECTIONS ⬤⟿71—RESIDENCE—ELEMENTS.
   The residence of an individual for purposes of voting depends, not upon a mere exercise of the will, but upon the purpose of the individual as evidenced by his conduct.
   [Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 67–74; Dec. Dig. ⬤⟿71.]

2. DOMICILE ⬤⟿10—RESIDENCE—EVIDENCE.
   Mere isolated facts are not conclusive of residence, and while ownership is a fact to be considered, the more important consideration is the present relation of the individual to the premises, his purpose in leaving, and his intention to return.
   [Ed. Note.—For other cases, see Domicile, Cent. Dig. § 39; Dec. Dig. ⬤⟿10.]

3. DOMICILE ⬤⟿8—RESIDENCE—PRESUMPTION.
   Residence, once established, is presumed to continue until a residence elsewhere has been established.
   [Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 36, 37; Dec. Dig. ⬤⟿8.]

4. ELECTIONS ⬤⟿71—RESIDENCE—VOTING DISTRICT.
   The intention of returning to the premises merely for the purpose of voting is not sufficient to preserve a residence there, since residence does not depend upon the elective franchise, and the intent to change or not to change residence is controlling, not the intent as to the exercise of the voting privilege.
   [Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 67–74; Dec. Dig. ⬤⟿71.]

5. DOMICILE ⬤⟿2—"RESIDENCE"—DISTINGUISHED.
   While a person may have two or more residences, as distinguished from domicile, the word "residence," as used in the Constitution or in statutes relating to the subject of voting or eligibility to office, jurisdiction in divorce, probate, and administration, etc., is in nearly every case synonymous with "domicile."
   [Ed. Note.—For other cases, see Domicile, Cent. Dig. § 2; Dec. Dig. ⬤⟿2.
   For other definitions, see Words and Phrases, First and Second Series, Domicile; Residence.]

6. ELECTIONS ⬤⟿73—RESIDENCE—VOTING DISTRICT.
   Defendant, who owns saloon property where he formerly resided, removed therefrom and with his family lived on other premises for many years, although continuing to register and vote from the saloon. *Held*, that the saloon was not his place of residence, so as to entitle him to vote in that district.
   [Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 69, 70; Dec. Dig. ⬤⟿73.]

7. ELECTIONS ⬤⟿73—RESIDENCE—ELECTION DISTRICT.
   Where a cemetery caretaker lived with his family in a house furnished by the cemetery association, but regarded premises owned and formerly occupied by him in another election district as his home, and registered and voted in that district for 20 years, *held* that, since he did not intend to make the cemetery his home, his former domicile continued his residence.
   [Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 69, 70; Dec. Dig. ⬤⟿73.]

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. ELECTIONS ⊙⟶71—RESIDENCE.**

A man can have but one domicile, and cannot maintain a legal residence, apart from his domicile, merely for voting purposes.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 67–74; Dec. Dig. ⊙⟶71.]

**9. DOMICILE ⊙⟶1—DURATION.**

The law does not regard the possibility of an individual without a domicile, and a domicile, once acquired, continues until terminated by the acquisition of another.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 1; Dec. Dig. ⊙⟶1.]

Kellogg, P. J., and Cochrane, J., dissenting in part.

Appeal from Albany County Court.

Application by Andrew Armstrong to remove from the registry list the names of John Donohue and others. From an order of the County Court dismissing the proceedings under section 153 of the Election Law (Consol. Laws, c. 17), petitioner appeals. Affirmed in part, and reversed in part.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Egburt E. Woodbury, Atty. Gen. (James S. Y. Ivins, Deputy Atty. Gen., of counsel), for appellant and for state superintendent of elections.

WOODWARD, J. The moving papers allege that John Donohue had registered as residing at 445 Sixth avenue, Second election district, in the First ward in the city of Watervliet, whereas he actually resided at St. Patrick's Cemetery, in the town of Colonie; that James H. Connors and Joseph G. Connors had registered as residing at 436 Second avenue, in the Second election district of the First ward of the city of Watervliet, but that James H. Connors resided on Sixth street, in the Second ward, and Joseph G. Connors actually resided on Third avenue, in the Second ward. There is no suggestion that any one of these men intended to commit a crime; they have acted in entire good faith, believing that they had a right to determine for themselves their voting residences, as distinguished from their homes, based upon some popular impressions which have found their justification in the determination of the court in People v Platt, 117 N. Y. 159, 22 N. E. 937; and while the question is here presented in a somewhat academic light, it has been thought proper to attempt a determination of the question of what constitutes a "resident," within the meaning of the Constitution and statutes regulating the exercise of the elective franchise.

The respondents were personally present, and at the suggestion of their counsel they were permitted to testify as to the facts. Donohue testified that he owned the house from which he registered, No. 445 Sixth avenue; that he has registered from there for 12 years, and has personal property there, and has mail sent there; that he used to live there for 12 or 14 years, but that he left there some 6 years ago to live in the cemetery; that he is the caretaker of the cemetery, and has a

residence—a dwelling house—in which he lives, and did live with his wife until she died, and from where she was buried, and where the children live with him; that the house at 445 Sixth avenue was vacant for a long time, but for the seven months prior to the hearing was occupied by a man named Hogan and his wife, who paid rent for the premises. Donohue explained his reasons for not registering from the cemetery as follows:

"Well I have been over 20 or 21 years voting in that place; didn't think hardly right to vote in Colonie, too far from home; it's more to home than where I was; I always voted there; I always called my home, always will vote there."

[1] It is a significant fact that in all the investigation of this subject, whether in the courts or out of them, there is an implied understanding that residence depends, not upon a mere exercise of the will, but upon the purpose of the individual, as evidenced by his own conduct. The expression is often found in judicial utterances that the question of residence depends upon the intent of the individual, but the context is usually found to contain the limitation that the intent is not a mere arbitrary declaration on the part of the individual, but is to be gathered from his conduct as evidenced in his daily life; and so, when these respondents were put upon the stand, they were questioned as to some of the physical facts, showing a recognition of the general proposition.

[2, 3] But mere isolated facts cannot be relied upon wholly to determine the question of when a man is or is not a resident of a particular place. The fact that he owns the premises from which he registers is one fact to be considered, but the more important fact is his present relation to the premises. If he originally lived in the premises, if he had a residence there, the presumption of law is that he continues to reside there until he has established a residence elsewhere, and the fact of his removal is one of the things to be taken into consideration; but he may change his physical abode temporarily for some particular reason, and so the question comes up: What was his intention in removing from the original residence? Did he go away for a limited purpose, intending to return, not merely to the premises, but to the residence—to continue his relation as a resident of the community—or was it with the purpose of making a new home, of taking up a new residence?

[4] The mere intention of coming back to the premises for the purpose of voting is not such an intention as will preserve the residence. It is the intention of not abandoning his status as a resident which is controlling, for there is, in fact, no such thing as a voting residence as distinguished from an actual residence. Residence does not depend in the slightest degree upon the elective franchise; it is something that exists entirely independent of the right of voting, and it is referred to in connection with the ballot just in the same sense that in earlier days the possession of property was a necessary condition to the right of suffrage. Every man has the right of suffrage under the conditions named in the Constitution and laws, and one of the conditions of the exercise of that right is that he must have been a resident of the elec-

tion district where he offers his vote for a period of 30 days prior to the election (Const. N. Y. art. 2, § 1), and the fact that a man, who has gained a residence in one district, removes to another district and becomes in all respects a resident of such district, has mentally resolved that he will come back to the district for the purpose of voting, does not have any bearing whatever upon his status as a resident. It is his intent to change or not to change his residence which is controlling, not his intent in reference to his exercise of a purely political franchise; and it is a failure to recognize this distinction which has led to so much of confusion upon this question of residence in connection with the right of the citizen to vote.

·[5] It is true, of course, that a person may have two or more residences, as distinguished from a domicile (Bischoff v. Bischoff, 88 App. Div. 126, 85 N. Y. Supp. 81, and authorities there cited); but the word "residence" or "resident," when used in the Constitution, or in statutes relating to the subject of voting and eligibility to office, jurisdiction in divorce, probate, and administration, etc., is in nearly every case synonymous with "domicile." Cincinnati, H. & D. R. Co. v. Ives, 3 N. Y. Supp. 895, and authorities there cited; Bell v. Pierce, 51 N. Y. 12, 17; Barney v. Oelrichs, 138 U. S. 529, 532, 11 Sup. Ct. 414, 34 L. Ed. 1037; De Meli v. De Meli, 120 N. Y. 485, 491, 24 N. E. 996, 17 Am. St. Rep. 652. In the latter case the court say:

"In legal phraseology 'residence' is synonymous with 'inhabitancy' or 'domicile.' And it is in this sense that the term 'resident' is used in the provisions of the Code before referred to, and persons having that relation to this state are its citizens and residents, and for the purposes of the relief like that in view of this action they are subject to the jurisdiction of its courts. The purposes for which residence is not determined by domicile are those within the contemplation of some statutes. Such application has been made of statutes providing for levy of attachments on the property of nonresidents, and the assessment of taxes on the personal property of residents. Then, and for the purpose of such remedy and taxation, the place where the party actually resides may (as has been held) be treated as that of his residence, although his domicile is elsewhere."

Generally speaking, however, the word "resident," as used in the Constitution, must be held to mean the domicile of the party, and particularly where, as in the case of two of the respondents, they are not shown to have any possible residence outside of their established homes. It might well be that a man could have two homes—two residences in that sense—and that he might elect which one of those homes should constitute his residence for the purposes of his political rights; but he could not make himself a political resident of both, and so it comes back to the proposition that a man's residence, for the purposes of voting, is his domicile—his permanent home. That is the point where his relations to the state center, where his citizenship manifests (De Meli v. De Meli, supra, 120 N. Y. 491, 24 N. E. 996, 17 Am. St. Rep. 652), and no mere purpose on the part of an individual to hold onto a political residence, apart from his civil abode, can satisfy the letter or the spirit of the Constitution, which seeks to vest the political powers of the state in its resident citizens at the point of their domicile.

[6] Applying the rule to the facts in this case, James H. Connors owns the premises at 436 Second avenue from whence ·he registered.

The place is a saloon, and originally he resided there. But he removed his family from the saloon property to 309 Sixth street, some 16 or 17 years ago, and resides with his family at this place, though he has continued to register and to vote as from the saloon. The fact that he occasionally sleeps at the saloon is of no more importance than the fact that he might on occasion sleep at the house of a neighbor, or in a hotel. Cincinnati, Hamilton & Dayton R. R. Co. v. Ives, 3 N. Y. Supp. 895. It is not suggested that he left the saloon with his family with any intention of ever bringing his family back to the saloon to live; it is entirely obvious that he did not, for he has continued at his present residence for many years, and the mere fact that he considered it desirable for political purposes to continue to register and vote from that point did not make him a resident of the saloon within the letter or the intent of the Constitution and the laws of this state as applied to the elective franchise. Joseph G. Connors is in identically the same situation, and the same rule applies to him.

[7-9] So far as John Donohue is concerned, he appears to have been the owner of the premises from which he registered, although they were occupied at the time by a tenant. He formerly resided at this place, and it may be fairly inferred from his testimony that he still regarded the premises at 445 Sixth avenue, Watervliet, as home. He says that he had voted from these premises for 20 years or more; that he did not hardly think it was right to vote in Colonie; it was too far from home; "it was more to home than where I was." At the time of his registration he was the caretaker of a cemetery in the town of Colonie, and occupied the caretaker's house within the cemetery grounds. It may be assumed that he did not intend to make the cemetery his permanent home; that he intended to remain there only so long as his job as caretaker should continue, for upon the termination of that employment the cemetery association would require the house for his successor. If this was the situation, and nothing different appears in the record, then he would not be deemed to have gained a residence in the cemetery at Colonie. He had a residence in Watervliet; he owned the property which had been his legal residence, and, having once had a residence, he could not lose it until he had gained a new one, for a man can have but one residence in the sense of a domicile (Cincinnati, Hamilton & Dayton R. R. Co. v. Ives, 3 N. Y. Supp. 895; Bell v. Pierce, 51 N. Y. 12, 17), and the law does not recognize the possibility of a man being without a domicile. Having once had a domicile, unless he has gained a new one elsewhere, he retained the domicile of origin. De Meli v. De Meli, supra, 120 N. Y. 491, 24 N. E. 996, 17 Am. St. Rep. 652. Taking this view of the case, in so far as John Donohue is concerned, the order should be affirmed, but in the case of the Connors, respondents, the order should be reversed, for they were in no wise residents of the saloon from which they registered.

In the case of People v. Platt, 117 N. Y. 159, 22 N. E. 937 the question presented was whether Mr. Platt, who had been a resident of Owego, and who had gone to the city of New York to act as the president of an express company, boarding at a hotel, could gain such a residence in the city of New York as to be able to hold an office under the pro-

visions of chapter 358 of the Laws of 1863, while retaining his legal residence, entitling him to vote, in Owego. The act required the office of quarantine commissioner to be filled by "three discreet persons, citizens of this state, who shall be residents of the metropolitan police district," and the proposition decided was that Mr. Platt, under the facts appearing in that case, could not be a resident of Owego and of the city of New York at one and the same time, within the meaning of the word "resident" as used in that act. The court, after pointing out that a resident bears a legal relation to the community, continues:

"And in all cases where a statute prescribes 'residence' as a qualification for the enjoyment of a privilege or the exercise of a franchise, the word is equivalent to the place of domicile of the person who claims its benefit. The defendant offers his vote in Tioga county because he is a resident of that county, and of the election district where it is offered; it is received under the provisions of law that a person so situated shall be entitled to the privilege. And his absence from that county, however long, so that it is temporary, and not an abandonment of his home, will not deprive him of his residence, though his absence extend through a series of years. Nor can his actual presence during that time in another district entitle him to the enjoyment of another franchise for which only a resident of that district is by law qualified. For the latter purpose he is, in contemplation of law, as much a stranger in the 'metropolitan police district' as for the other purpose he is at home, or resident in Tioga."

See Matter of McCormack, 86 App. Div. 362, 83 N. Y. Supp. 847; Matter of Barry, 164 N. Y. 18, 58 N. E. 12, 52 L. R. A. 831.

It seems clear from reason and authority that a man cannot have two legal residences at the same time, and that, for the purposes of voting, he cannot have a domiciliary residence separate and apart from the home which he provides for his family, and which he habitually uses as his own habitation, with no intention of departing therefrom, except for temporary purposes. He cannot actually live in one locality for the sake of the comfort, convenience, and social standing of his family, and maintain a wholly distinct political residence in a saloon or other place. That is not serving the purpose which the Constitution contemplated, and it is not the law.

The order appealed from should be affirmed as to John Donohue, and reversed as to James H. and Joseph G. Connors, but without costs. All concur, KELLOGG, P. J., in result in memorandum, except COCHRANE, J., who votes for affirmance of the entire order.

JOHN M. KELLOGG, P. J. (concurring as to Donohue and dissenting as to the Connors). A residence for voting purposes is not a mere state of mind, and cannot be established solely by proof of intentions. The intention of the party is a material consideration in determining his place of residence. The intention we are interested in is, not where he intends to vote, but where he intends to live as his permanent home. The right to vote may follow his intention; but the mere intention to vote at a place, standing alone, has no particular bearing upon his place of residence. Undoubtedly a man may temporarily leave his home for a longer or shorter time, and maintain his household elsewhere, for purposes of business or pleasure, and so long as he considers his absence as merely temporary, and he has a bona fide intent to return to

his former home, he does not lose his residence there. · The establishment of a permanent home in one locality, and an intention to vote in another locality, does not make a man a resident of the latter place. His right to vote follows his actual residence, unless the actual residence is merely for a temporary purpose. The intent to permanently live in one place is entirely inconsistent with the right to vote in another place.

It is evident that Donohue is living at the cemetery temporarily, retaining his former residence with an honest intent to return there. That is his home; the house at the cemetery is a temporary place of sojourn, depending upon the continuance of his job. I think he was properly registered, and the order in his case properly made.

The Connors have permanent residences elsewhere, and live with their families elsewhere. There is nothing to indicate that they ever intend to return to the saloon and make it their home. They do not pretend to have any such intention. They are seeking to maintain the right to vote in the district where the saloon is purely by an operation of the mind, evidently considering it better for the interest of the saloon that they should vote there than elsewhere. They were improperly registered. The order as to them should be reversed.