(November 3, 1923.)

## MARY E. REUBELMANN, Respondent, v. LOUIS REUBELMANN, Appellant.

[220 Pac. 404.]

DIVORCE — PLAINTIFF — DOMICILE — RESIDENCE — TEMPORARY ABSENCE FROM STATE—EVIDENCE—CORROBORATION—EXTREME CRUELTY.

1. The essential difference between residence and domicile is that the first involves the intent to leave when the purpose for which one has taken up his abode ceases. The other has no such intent; the abiding is *animo manendi*.

2. The "residence" contemplated by C. S., sec. 4639, is intended to mean "domicile."

3. The temporary absence from this state of one domiciled here will not be held a change of residence, unless to the *factum* of residence elsewhere be added the *animus manendi,* for a domicile, having once been acquired, continues until a new one is actually acquired *animo et facto.*

4. No general rule can be laid down as to the degree of corroboration required in a divorce action, but each case must be decided on its own facts and circumstances.

5. When the ground of the divorce action is extreme cruelty it is frequently impossible to obtain corroboration of the specific acts of cruelty alleged, but in such cases there may be evidence of other facts that furnish a degree of corroboration sufficient to meet the requirements of the statute. The court had a right to consider all facts and circumstances in evidence, outside of the testimony and admissions of the parties, that threw any light on the conduct of the appellant toward the respondent in determining whether or not the testimony of the respondent was sufficiently corroborated.

APPEAL from the District Court of the Fifth Judicial District, for Bannock County. Hon. Ralph W. Adair, Judge.

Action for divorce. Judgment for plaintiff. *Modified* and *affirmed.*

W. H. Witty and John W. Peter, for Appellant.

C. S., secs. 4639, 4640, on residence, mean just what they say. There is a vast difference between the words "residence" and "citizen" as used in such statutes, and especially where it is jurisdictional, as it is here. (*Steigleber v. McQuesten,* 198 U. S. 141, 25 Sup. Ct. 616, 49 L. ed. 986; *Parker v. Overman,* 18 How. (U. S.) 137, 15 L. ed. 318; *Robertson v. Cease,* 97 U. S. 646, 24 L. ed. 1057.)

There is no corroboration of the plaintiff's testimony, and no testimony on her part that she suffered any pain, suffering or humiliation of any kind, and the trial court having made no findings on this point, it is inconceivable upon what theory the decree can be sustained. (*Donaldson v. Donaldson,* 31 Ida. 180, 170 Pac. 94; *Barker v. Barker,* 25

Okl. 48, 105 Pac. 347, 26 L. R. A., N. S., 909; *Strode v. Strode,* 6 Ida. 67, 96 Am. St. 249, 52 Pac. 161; *Rowe v. Rowe,* 84 Kan. 696, 115 Pac. 553; *De Cloedt v. De Clocdt,* 24 Ida. 277, 133 Pac. 664.)

In dividing the community property the trial court abused his discretion in view of the record, even if the divorce is sustained. (*Bell v. Bell,* 15 Ida. 7, 96 Pac. 196.)

Peterson & Coffin, Chas. H. Darling and W. J. Ryan, for Respondent.

"The word 'residence' as used in divorce statutes should be equivalent to 'domicile,' but the qualification of citizenship is not exacted." (19 C. J. 26; *Connolly v. Connolly,* 33 S. D. 346, 146 N. W. 581; *Carpenter v. Carpenter,* 30 Kan. 712, 46 Am. Rep. 108, 2 Pac. 122; *Beeman v. Kitzman,* 124 Iowa, 86, 99 N. W. 171; *Hanson v. Hanson,* 78 N. H. 560, 103 Atl. 307; *Sneed v. Sneed,* 14 Ariz. 17, 123 Pac. 322, 40 L. R. A., N. S., 99.)

In the above-cited cases it has been held, under statutes very similar to C. S., sec. 4639, that the word "residence" has practically the same meaning as the word "domicile."

"An established domicile is not lost merely by a temporary absence therefrom, or temporary residence elsewhere, however long-continued, even for a period of years." (19 C. J. 423; *People v. Platt,* 117 N. Y. 159, 22 N. E. 937; *In re Barclay's Estate,* 259 Pa. 401, 103 Atl. 274.)

"There must have been a concurrence of both the *factum* of removal and the *animus* to remain in the new locality before the domicile can be considered lost." (*Dow v. Gould & Curry Silver Mining Co.,* 31 Cal. 629; *Keith v. Stetter,* 25 Kan. 70; *Hart v. Horn,* 4 Kan. 198; 9 R. C. L. 403; *Duxstad v. Duxstad,* 17 Wyo. 411, 129 Am. St. 1138, 100 Pac. 112.)

No definite rule as to the degree of corroboration required could be laid down, and each case must be decided according to its own facts and circumstances. (*Donaldson v. Donaldson,* 31 Ida. 180, 170 Pac. 94; *Blanchard v. Blanchard,* 10 Cal. App. 203, 101 Pac. 536; *MacDonald v. MacDonald,*

155 Cal. 665, 102 Pac. 927, 25 L. R. A., N. S., 45; *Piatt v. Piatt*, 32 Ida. 407, 184 Pac. 470.)

The trial court did not abuse its discretion in assigning the community property to the parties and the distribution as made is not inequitable to the appellant. (*De Cloedt v. De Cloedt*, 24 Ida. 277, 133 Pac. 664; *Later v. Haywood*, 15 Ida. 716, 99 Pac. 828; *Swanson v. Kettler*, 17 Ida. 321, 105 Pac. 1059; *Snowy Peak etc. Co. v. Tamarack etc. Min. Co.*, 17 Ida. 630, 643, 107 Pac. 60; *Thomsen v. Thomsen*, 31 Cal. App. 185, 159 Pac. 1054; *Nave v. Nave*, 35 Cal. App. 27, 169 Pac. 253; *Rose v. Rose*, 112 Cal. 341, 44 Pac. 658.)

DUNN, J.—This is an action for divorce brought by the wife against the husband on the ground of (1) extreme cruelty and (2) nonsupport. Findings of fact and conclusions of law were made by the trial court sustaining the charge of cruelty and also the charge of nonsupport. Decree was entered granting a divorce to the wife and awarding her more than one-half of the community property.

The appeal is from the judgment and appellant assigns as error the action of the court in finding (1) that respondent had resided in Idaho for more than one year next before the bringing of the action; (2) that defendant was guilty of extreme cruelty in calling respondent vile names; (3) that the charge of nonsupport was sustained, and (4) in concluding that respondent was entitled to the Dearborn rooming-house and the note for $1,000 due from one Van der Donckt.

It is beyond question that appellant and respondent were domiciled in Idaho and lived together as husband and wife from 1884 and in Pocatello from 1887 to November, 1919. The only question about this point is whether respondent, by going to California in November, 1919, and remaining there almost all the time up to February, 1920, lost her legal residence in Idaho. We think she did not. It is shown that appellant went to California immediately after respondent went and that for about two months after their arrival there they lived together as husband and wife. He

returned to Idaho in January, 1920, while she remained in California until October, 1920, when she returned to Idaho for about ten days. She then went back to California and remained until February, 1921, when she returned to Pocatello and began this action for divorce. No special reason is assigned for her stay in California, but the record shows her to have been in a nervous condition, which might have necessitated the move. There is nothing whatever in the record to suggest her lack of residence in Idaho at the time this action began except the fact that, after more than thirty years of continuous residence in this state, she was actually without the state for the period stated. There is not a word of testimony showing an intention on her part to forfeit her domicile in Idaho. Without such intention no such result would follow her stay in California. In discussing a situation very similar to that involved here, the New Jersey court of errors and appeals, in the case of *Harral v. Harral,* 39 N. J. Eq. 279, 285, 51 Am. Rep. 17, said:

"A person *sui juris* may change his domicile as often as he pleases. To effect such change . . . . there must be a voluntary change of residence; the residence at the place chosen must be actual; to the *factum* of residence there must be added the *animus manendi;* and that place is the domicile of a person in which he has voluntarily fixed his habitation, and not for a mere temporary or special purpose, but with a present intention of making it his home unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home." (*Watkinson v. Watkinson,* 68 N. J. Eq. 632, 638, 6 Ann. Cas. 326, 60 Atl. 931, 69 L. R. A. 397; *Duxstad v. Duxstad,* 17 Wyo. 411, 129 Am. St. 1138, 100 Pac. 112; *People v. Platt,* 117 N. Y. 159, 22 N. E. 937.)

The rule as to domicile laid down by the New Jersey court is the correct one to be applied, under our statutes, and is as follows:

"The temporary absence from this state of one domiciled here will not be held a change of residence, unless to the

*factum* of residence elsewhere be added the *animus manendi*, for a domicile, having once been acquired, continues until a new one is actually acquired *animo et facto.*" (*Watkinson v. Watkinson*, 68 N. J. Eq. 632, 6 Ann. Cas. 326, 60 Atl. 931, 69 L. R. A. 397.)

C. S., sec. 4639, reads as follows:

"A divorce must not be granted unless the plaintiff has been a resident of the state for 12 months next preceding the commencement of the action and of the county in which the action is instituted for six months where the cause of action arises outside this state."

A "resident" of the state as contemplated by this section includes one who has clearly been domiciled within this state for a long period of time, but who has been temporarily absent from the state during much, if not all, of the year immediately preceding the bringing of the divorce action, as in this case, without an intention to change the domicile, but it does not include one who, for many years, may have been actually residing within the state, but without the intention to remain. The "residence" contemplated by C. S., sec. 4639, is intended to mean "domicile." While the two words are frequently used interchangeably there is a distinction to be noted between them, as pointed out in the following from Bouvier's Law Dictionary, Rawle's 3d Rev., p. 2920:

"A residence is different from a domicil, although it is a matter of great importance in determining the place of domicil. The essential distinction between residence and domicil is that the first involves the intent to leave when the purpose for which one has taken up his abode ceases. The other has no such intent; the abiding is *animus manendi*. One may seek a place for the purposes of pleasure, of business or of health. If his intent be to remain, it becomes his domicil; if his intent be to leave as soon as his purpose is accomplished, it is his residence."

It is to be observed that appellant did not deny the respondent's allegation that she was then and had been for more than thirty years a *bona fide* resident of Bannock

county, Idaho, and the record discloses no attempt to show that she was not such a resident. The evidence is ample to sustain the court's finding on that point.

The contention of appellant that the finding of the court that appellant was guilty of extreme cruelty "is wholly unsupported by sufficient testimony to justify the court in making said finding," and "that there is not the slightest corroboration of the plaintiff's testimony as to the acts of cruelty alleged against the defendant" is without support in the record. It is not necessary to repeat here the vile and indecent epithets that the court found to have been applied to respondent by appellant. That he did so apply them is positively testified by respondent and admitted in part by appellant. This evidence finds sufficient corroboration in the testimony of one Sims.

After quoting from *Venzke v. Venzke,* 94 Cal. 225, 29 Pac. 499, to the effect that in the very nature of the case it would be impossible to lay down a general rule as to the degree of corroboration required in divorce actions, and that the statute requires only that there shall be some corroborating evidence, this court announced the rule to be. that "there must be some evidence corroborating the plaintiff aside from the testimony or confession or admission of the defendant." (*Bell v. Bell,* 15 Ida. 7, 25, 96 Pac. 196, 203; *De Cloedt v. De Cloedt,* 24 Ida. 277, 133 Pac. 664; *Donaldson v. Donaldson,* 31 Ida. 180, 170 Pac. 94.)

When the ground of the divorce action is extreme cruelty it is frequently impossible to obtain corroboration of the specific acts of cruelty alleged, but in such cases there may be evidence of other facts that furnish a degree of corroboration sufficient to meet the requirements of the statute. The court had a right to consider all facts and circumstances in evidence, outside of the testimony and admissions of the parties, that threw any light on the conduct of the appellant toward the respondent in determining whether or not the testimony of the respondent was sufficiently corroborated. The rule is satisfied by the corroboration shown in

the record, there being substantial evidence to support that of respondent and appellant. .

Appellant complains also that the court did not find "that such conduct of the defendant as the plaintiff complains of caused her any pain or suffering of any kind whatsoever, but the contrary rather appears from the record." It is true that no finding of the kind mentioned was made by the court, but this court has said that "In the absence of objection made in the trial court that the findings are insufficient, in the construction of findings to support the judgment the court will consider as found every reasonable inference of fact which may be drawn from the facts found." (*Donaldson v. Donaldson, supra.*) In the absence of evidence to the contrary it must be assumed that respondent is a woman of chastity, of a fair degree of intelligence and that she understood the meaning of the obscene terms applied to her by appellant. If so, whatever may be held as to the varying effect of other kinds of cruelty upon different kinds of plaintiffs we think it must necessarily follow that such conduct on the part of appellant as is shown in this case must have caused respondent such pain, suffering and humiliation as to constitute the "grievous mental suffering" which the statute says is extreme cruelty. We confess to no high degree of patience with the argument of appellant which says in substance that even if his conduct was as found by the court it ought not to avail respondent anything because it did not pain or humiliate her.

The court found all property owned by the parties to be community property and of the value of $65,000 or $70,000. The Dearborn rooming-house, valued at about $40,000, was awarded to respondent and the remainder of the property, except a note for $1,000, to appellant, and in addition appellant was given, for five years, without charge, the use of that store-room in the rooming-house now occupied by the business of appellant, estimated to be of the value of $50 per month. One of the conclusions of the court was that the note above mentioned, due from one Van der

Donckt, should be given respondent, but this was omitted from the decree. Appellant complains of this division as inequitable.

Subdivision 1 of C. S., sec. 4650, provides that:

"If the decree be rendered on the ground of adultery or extreme cruelty, the community property must be assigned to the respective parties in such proportions as the court, from all the facts of the case and the condition of the parties, deems just."

In his answer appellant admitted the total value of the common property to be $60,000 and the value of the Dearborn rooming-house to be $40,000, but in his testimony he fixed the value of the latter at $35,000. That the wife has been given considerably the best of it in the division of the property, when we look at the present value of the respective allotments, cannot be denied, but the record furnishes a probable reason for the inequality, aside from the ground of divorce involved here. On the second ground for divorce the court found that "for more than fifteen years prior to the filing of the complaint herein this defendant has failed to provide the plaintiff with the common necessities of life, he having the ability so to do, and that during said time said plaintiff on occasions while in impaired health has been compelled by the defendant to provide for herself and for the defendant by working long hours at hard manual labor." The record also shows that the Dearborn was purchased largely, if not entirely, by the personal labor and attention of respondent. The evidence shows a balance of about $1,500, due the community from one Rossiter on the purchase price of the furniture in the Dearborn rooming-house, which balance was awarded to respondent. Upon the entire record we are inclined to the view that a division more nearly equitable would be made by giving appellant this balance due on the furniture and the note for $1,000. This would leave respondent's share still much greater than that of appellant, but of this inequality, under the law and the facts, appellant has no ground to complain.

The trial court is directed to modify the decree so as to include the balance due on the furniture and the Van der Donckt note with the property awarded to appellant. Thus modified, the judgment is affirmed. No costs to either party.

Budge, C. J., and McCarthy, William A. Lee and Wm. E. Lee, JJ., concur.