**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 34233**

| | |
|---|---|
| SAINT ALPHONSUS REGIONAL ) <br> MEDICAL CENTER, INC., an Idaho ) <br> nonprofit corporation (regarding Javier ) <br> Ortega Sandoval), ) <br> ) <br>     Petitioner-Appellant, ) <br> ) <br> v. ) <br> ) <br> BOARD OF COUNTY COMMISSIONERS ) <br> OF ADA COUNTY, ) <br> ) <br>     Respondent. ) <br> ) | Boise, May 2008 Term <br><br> 2008 Opinion No. 83 <br><br> Filed: June 16, 2008 <br><br> Stephen W. Kenyon, Clerk |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. D. Duff McKee, District Judge.

District court order affirming decision of Ada County Board of Commissioners, <u>reversed</u> and <u>remanded.</u>

Taylor, Taylor & Pitts, P.A., Twin Falls, for appellant.  Steven Bradley Pitts argued.

Greg Hollis Bower, Ada County Prosecuting Attorney, Boise, for respondent.  Claire S. Tardiff argued.

―――――――――――――――――――――

BURDICK, Justice

Saint Alphonsus Regional Medical Center (SARMC) appeals from a district court order affirming the decision of the Ada County Board of Commissioners (the Board) denying medical indigency benefits for Javier Ortega Sandoval.  We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

While working for Eagle Landscape Contractors on March 22, 2006, Javier Ortega Sandoval (Sandoval), an undocumented immigrant, suffered a stroke.  He was taken to SARMC, hospitalized for nearly two months, and incurred medical bills in excess of $187,000.  Sandoval

1

was unable to pay the hospital bills, and his son, Francisco Pacheco Sandoval (Francisco), applied for medical indigency assistance from Ada County while Sandoval was still hospitalized.

The application indicated that Sandoval came to Boise from Mexico in 2005. Ada County began investigating the application. During an interview, Francisco told the clerk that Sandoval came to Boise to work and that he was an undocumented immigrant. The Board initially denied the application because it concluded that Sandoval could not be a resident of Idaho as he was an illegal immigrant.[1] SARMC then appealed the initial determination.

The Board held a hearing on August 16, 2006. However, additional information was still needed to complete the record, so a second hearing was held on September 6, 2006. Sandoval and Francisco testified at that hearing. After taking the matter under advisement, the Board affirmed its initial determination. SARMC appealed to the district court, which affirmed the Board's decision. SARMC now appeals to this Court.

## II. STANDARD OF REVIEW

"The denial of an application for indigency benefits is reviewed under the Administrative Procedure Act." *Bonner Gen. Hosp. v. Bonner Co.*, 133 Idaho 7, 9, 981 P.2d 242, 244 (1999). We may not substitute our judgment for that of the administrative agency on questions of fact. *Id.*

> When the agency was required . . . to issue an order, the court shall affirm the agency action unless the court finds that the agency's findings, inferences, conclusions, or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3).

The Board's decision is analogous to an agency's decision. *See E. Regl. Med. Ctr. v. Ada Co. Bd. of Commrs.*, 139 Idaho 882, 884, 88 P.3d 701, 703 (2004). "This Court independently reviews the agency's decision. We give serious consideration to the district court's decision, but review the matter as if the case were directly appealed from the agency." *Bonner Gen. Hosp.*, 133 Idaho at 9, 981 P.2d at 244. Determining the

---

[1] It also denied the application because it found that Francisco had not provided information about Sandoval's resources and thus had not cooperated in the investigation.

meaning of a statute is a matter of law. *E. Regl. Med. Ctr.*, 139 Idaho at 884, 88 P.3d at 703.

## III. ANALYSIS

The parties present a single legal issue for the Court's review: whether Sandoval is a resident of Ada County for the purpose of medical indigency benefits. We will first address that issue and then turn to the parties' claims for fees and costs under I.C. § 12-117.

**A. Sandoval is a resident for purposes of I.C. § 31-3502(12).**

SARMC argues that the Board's decision violated pertinent statutory provisions because the Board incorrectly determined that as a matter of law Sandoval, an illegal immigrant, could never form the requisite intent to be a resident since he would always be subject to deportation, and because the Board incorrectly equated domicile with residency. We agree. By examining Sandoval's immigration status, the Board incorrectly applied an objective standard of intent not found in Idaho law; moreover, the Board incorrectly used domicile as the standard to determine eligibility for indigency benefits when our statute requires only residency.

Idaho's medical indigency statutes, Title 31, chapter 35 of the Idaho Code (the Act) provides that the county of residency for the indigent person shall be obligated to pay for medical services. I.C. § 31-3506. The Act also provides a standard to determine residency. I.C. § 31-3502(12); *E. Idaho Regl. Med. Ctr.*, 139 Idaho at 884, 88 P.3d at 703. The Act defines a resident as:

> a person with a home, house, place of abode, place of habitation, dwelling or place where he or she actually lived for a consecutive period of thirty (30) days or more within the state of Idaho. A resident does not include a person who comes into this state for temporary purposes, including, but not limited to, education, vacation, or seasonal labor . . . .

Idaho Code § 31-3502(12). This statute requires both a physical presence in Idaho and "implicitly creates an intent element." *E. Idaho Regl. Med. Ctr.*, 139 Idaho at 884, 88 P.3d at 703. Thus, for purposes of medical indigency, to be a resident of Idaho a person must have (1) been present in Idaho for at least thirty days and (2) have a present, subjective intent to reside in Idaho "either permanently, or at least longer than temporarily." *See id.*

Here, the parties agree that Sandoval met the first element of I.C. § 31-3502(12) as he had been in Idaho for longer than thirty days. The question, then, is whether he had the necessary subjective intent to be a resident of this state.

When examining whether Sandoval was a resident of Ada County, the Board found that Sandoval was an illegal immigrant who had come to Idaho in May 2005. The Board then concluded that Sandoval is not a resident of Ada County because he

> is a resident of Mexico with no proof of legal status to remain in the United States, his presence in the United States and Ada County must be found to be temporary since he is subject to deportation pursuant to the Immigration and Nationality Act, infra United States Code Title 8. While the provider may be required by federal law to treat the applicant, it is only after all the requirements of Idaho Code Title 31 Chapter 35 are satisfied, including residency, that a county is obligated to pay. Further, [Francisco] stated that Javier Ortega Sandoval came to the United States for work purposes. He is subject to deportation, and such purposes are therefore, temporary.

We reverse the Board's decision. First, Sandoval's status as an undocumented alien does not affect the determination of whether he is a resident of Ada County. The concept of residency does not distinguish between citizens and those who have entered this country illegally. *Intermountain Health Care, Inc. v. Bd. of Commrs. of Blaine Co.*, 109 Idaho 412, 415, 707 P.2d 1051, 1054 (1985) (Donaldson, C.J., concurring). All that is required to be a resident under I.C. § 31-3502(12) is living in an Idaho county for at least thirty days and a present, subjective intent to remain for a period of time. *E. Idaho Regl. Med. Ctr.*, 139 Idaho at 884, 88 P.3d at 703.[2] Any attempt to import a person's immigration status into the analysis would be to place a non-existent objective test into our law. While Sandoval may have been subject to deportation proceedings, there is nothing in the record to indicate that this possibility created in him a subjective intent to return immediately to Mexico. As such, the Board's use of Sanodval's status as an undocumented immigrant placed an unwarranted and statutorily unjustified objective test into the analysis.

Second, contrary to the Board's conclusion, it was unnecessary under I.C. § 31-3502(12) for Sandoval to intend to remain permanently in Boise, i.e., to establish domicile. Idaho Code § 31-3502(12) requires only residency. Residency deals with a person's location in a particular

---

[2] In 2007 the legislature added the requirement that all persons eighteen years of age or older must provide proof that they are legally in the United States prior to being able to receive public benefits. I.C. § 67-7901 (2007). This requirement is extended to medical indigency benefits, except for emergency medical treatment. I.C. § 67-7903 (2007). These new requirements do not affect the present case as they were adopted after the Board's decision on Sandoval's application. Moreover, that the legislature felt it necessary to adopt these statutes shows that the requirements they contain were not part of I.C. § 31-3502(12) at the time the Board was considering Sandoval's application.

place and is a broader concept than domicile. *Intermountain Health Care, Inc.*, 109 Idaho at 415, 707 P.2d at 1054 (Donaldson, C.J., concurring).

> The essential distinction between residence and domicil is that the first involves the intent to leave when the purpose for which one had taken up his abode ceases. The other has no such intent; the abiding is *animus manendi*. One may seek a place for the purpose of pleasure, of business or of health. If his intent be to remain, it becomes his domicil; if his intent be to leave as soon as his purpose is accomplished, it is his residence.

*Id.* (quoting *Reubelmann v. Reubelmann*, 38 Idaho 159, 164, 220 P. 404, 405 (1923) (citing Bouvier's Law Dictionary 2920 (Rawle's rev. 3d ed.)). Thus, a person can be a resident of a certain place he intends to eventually leave. *See id.*; *see also E. Idaho Regl. Med. Ctr.*, 139 Idaho at 884, 88 P.3d at 703 (holding that a resident is any person "who occupies a dwelling within the State, [and] has a present intent to remain within the State for a period of time . . . .").

Although Sandoval testified that he intended to return to Mexico, he did not testify as to when he intended to return to his homeland permanently.[3] Indeed, since he testified that he came to Boise to work and support his wife and young children and that he was working at the time he suffered a stroke, his purpose for taking up abode in Boise had not yet ended. Additionally, he did not testify that he came only as a seasonal laborer or only temporarily. Sandoval's testimony supports that he had the subjective intent to remain in Boise longer than temporarily. Therefore, since Sandoval testified that he had lived in Boise for more than thirty days and intended to remain in Idaho while working to support his wife and children in Mexico, he meets the statutory definition of resident under I.C. § 31-3502(12).

**B. We decline to award attorney fees to either party.**

SARMC and the Board seek attorney fees under I.C. § 12-117. Idaho Code § 12-117 provides that in administrative or civil judicial proceedings against a state agency, a county, or a city the court may award reasonable attorney fees to the prevailing party if the opposing party acted without a reasonable basis in fact or law. I.C. § 12-117; *Kootenai Med. Ctr. v. Bonner Co. Commrs.*, 141 Idaho 7, 10, 105 P.3d 667, 670 (2004). Here, we reverse the decision of the Board, so it is not the prevailing party and is not entitled to attorney fees. SARMC is the

---

[3] This lack of testimony was not an oversight on SARMC's attorney's part. When attempting to establish when Sandoval hoped to return to Mexico permanently, one of the Commissioners stopped the line of questioning and SARMC's attorney no longer attempted to establish those facts for the record.

5

prevailing party, but we decline to award it attorney fees as the issue presented was one of first impression.

## IV. CONCLUSION

We reverse the decision of the district court with instructions to remand to the Board for further proceedings consistent with this opinion. We decline to award attorney fees. Costs to SARMC.

Justices J. JONES, HORTON and KIDWELL, J. Pro tem, **CONCUR.**

Justice W. JONES, **dissenting.**

The majority determined that Sandoval did not reside in Idaho "for temporary purposes." Because I believe that Sandoval's purposes for residing here were in fact temporary, I respectfully dissent.

The case law cited by the majority established that Idaho Code § 31-3502(12) requires proof of two elements in order to prove residency status: (1) presence in Idaho for at least 30 days and, (2) a present, subjective intent to reside in Idaho "at least longer than temporarily." The second of these elements was not satisfied.[4]

This dissent is based on two points. First, I believe there is substantial, competent evidence to support the Board's factual finding that Mr. Sandoval was not a resident of Ada County and second, I disagree with the majority's opinion that a person's illegal status in the United States is irrelevant.

At the hearing before the Ada County Board of Commissioners, Mr. Sandoval testified that he came to Idaho in April, 2005 to find work, but was working "just a small amount of time." He further testified that "my desire is to return to Mexico . . . ." He further stated that when he came to Idaho "I was thinking of maybe returning to Mexico later on this year, the present year, but then I got sick . . . ." He added that "I wanted to return [to Mexico], I was thinking of returning, I wanted to return, yes." (Agency Tr., Sept.6, 2006 Hearing, p.10. L. 4 – p.11) There is also documentary evidence introduced that Sandoval had returned to Mexico after December 30, 2005, and then returned again to Idaho sometime before February 6, 2006.

---

[4] Moreover, it likely is the case that this element's presence in Idaho's jurisprudence is the result of an erroneous reading of Idaho Code § 31-3502(12). The question is not whether the purported resident possesses a *present* subjective intent to reside in Idaho but, rather, according to the statute, whether he "[came] into the state for temporary purposes." In other words, the relevant intent is the intent that existed at the time the potential resident attempted to reside here.

Sandoval's testimony supports the Board's finding that Sandoval was in Idaho only for temporary purposes. It is not the province of this Court to reweigh that evidence or upset the Board's findings when they are supported by such evidence. In *Neighbors for a Healthy Gold Fork v. Valley County,* 145 Idaho 121, ____, 176 P.3d 126, ____ (2007), in reviewing the decision of the Valley County Board of Commissioners, this Court stated: "The Court defers to the agency's findings of fact unless they are clearly erroneous and the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by evidence in the record." *See also*, *Whitted v. Canyon County Bd. of Com'rs*, 137 Idaho 118, 121, 44 P.3d 1173, 1176 (2002) ("the Board is treated as an administrative agency for purposes of judicial review."); *see also*, I.C. 67-5279(1), which states that "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."

As to the second point of this dissent, the majority has in effect held that a person can be a resident of a place in which he has no legal right to be. That holding seems anomalous to me. If a person has no legal right to be in Ada County and would presumably be removed as soon as the Immigration Service catches up with him, his tenure here can be nothing more than temporary. Even assuming a person's so-called "subjective intent" to remain here is the proper test, I believe such subjective intent must at least be reasonable or rational. It is undisputed in this case that Mr. Sandoval was illegally in the United States. To me, his status here was analogous to a fugitive from justice on the run from the law. I think even the majority would believe that such a person's physical presence here would be nothing more than a temporary convenience, subject to immediate relocation as the law closes in.

It is clear from I.C. § 31-3502(12) that the legislature intended to exclude from residency any person who comes into the state for "temporary purposes" and it is equally clear that the examples listed in the statute such as "education, vacation, or seasonal labor" are not exhaustive exclusions for temporary purposes since the statute clearly says that temporary purposes include but are not limited to the examples given. It would seem strange that the legislature would consider students coming into the state for "education" to be temporary regardless of how long they remain here or whether they clearly subjectively intend to remain in Idaho following their education, yet exclude from temporary purposes an illegal alien who comes into the state for

7

employment. Mr. Sandoval's tenure in Idaho could last only as long as he successfully evades the authorities.

In a footnote, the majority noted that the legislature has now required proof that the individual was here legally in order to receive public benefits. According to the majority, this subsequent legislative decision "shows that the requirements they contain were not part of I.C. § 31-3502(12) at the time the Board was considering Sandoval's application." This use of subsequent legislative history is entirely unhelpful, as it is pure conjecture and easily lends itself to manipulation. For example, this subsequent legislative history may just as easily support the opposite conclusion, since it can be argued equally as reasonably that this legislative change occurred because the legislature was making explicit exactly what it implicitly stated before, i.e., that legal status was required in order to receive benefits. This predictable back-and-forth is likely the reason that the U.S. Supreme Court repeatedly has stated that "subsequent legislative history is a hazardous basis for inferring the intent of an earlier" legislature. *Pension Benefit Guaranty Corp. v. LTV Corp.*, 110 S.Ct. 2668, 2678 (1990); *see also*, *United States v. Price*, 80 S.Ct. 326 (1960) ("the views of a subsequent [legislature] form a hazardous basis for inferring the intent of an earlier one.").

Since I believe this Court should not overturn the factual findings of the Ada County Board of Commissioners that Mr. Sandoval did not have the requisite intent to remain here more than temporarily and because I do not believe that a person physically present in Idaho can form a reasonable or rational intent to remain here more than temporarily when he is illegally within the jurisdiction of Idaho, I believe the decision of the Ada County Board of Commissioners denying eligibility for indigent medical benefits should be affirmed.