# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49537

|  |  |  |
|---|---|---|
| In Re:  Medical Indigency Application of K.J., D.J., and Corey A. Jacobs. Ada County Case Nos. 1803-092 & 1803-085 ------------------------------------------------ STEPHANIE OWENS, individually, <br><br>    Petitioner-Appellant, <br><br> v. <br><br> ADA COUNTY BOARD OF COMMISSIONERS, in its official capacity as the Board of Ada County Commissioners, <br><br>    Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Boise, January 2023 Term <br><br> Opinion Filed: March 15, 2023 <br><br> Melanie Gagnepain, Clerk |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Lynn Norton, District Judge.

The order of the district court is reversed.

Idaho Injury Law Group, PLLC, Boise, for appellant, Stephanie Owens. Edward Dindinger argued.

Jan M. Bennetts, Ada County Prosecuting Attorney, Boise, for respondent, Ada County Board of Commissioners. Claire S. Tardiff argued.

---

STEGNER, Justice.

This case stems from a district court's review of an agency action regarding two applications for medical indigency. Stephanie Owens appeals the district court's order affirming the findings of fact and conclusions of law made by the Ada County Board of Commissioners (the "Board") in which it determined that Owens was an "applicant" under the Medical Indigency Act (the "Act") and, therefore, required to pay reimbursement for the medical expenses incurred by her two children at public expense. In 2017, Owens's children were involved in a serious car accident and suffered substantial injuries, which later resulted in the death of one of the children. The children were taken to Saint Alphonsus Regional Medical Center where they received medical treatment. Because the children's father, Corey Jacobs, was unable to pay for the children's

1

medical bills, he filed two applications for medical indigency with the Board. Owens and Jacobs were never married and do not have a formal custody agreement for their children. At the time of the accident, the children resided with their father. He is not a party to this appeal.

The Board determined that Owens and her children met the statutory requirements for medical indigency. Although Jacobs filed the applications for medical indigency, the Board concluded that Owens was also an "applicant" under the Act and liable to repay the Board. As a result, the Board "recorded notices of statutory liens" against Owens's real and personal property and ordered Owens to sign a promissory note with Ada County to repay the medical bills.[1] Owens refused to sign the note and instead challenged the sufficiency of her involvement with the applications via a petition for reconsideration with the Board and a subsequent petition for judicial review. Both the Board and the district court ultimately concluded that Owens was an "applicant" and liable for repayment of a portion of the children's medical bills. Owens timely appealed. For the reasons discussed below, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Stephanie Owens's two children, K.J. and D.J., were involved in a serious car accident in December 2017. Both children were transported to Saint Alphonsus Regional Medical Center ("Saint Alphonsus") in Boise for medical treatment. K.J. was later discharged from the hospital, but D.J. passed away as a result of her injuries. Corey Jacobs and Owens have never married, live separately, and do not have a formal custody arrangement for their children. At the time of the accident, the children were living full-time with their father. The cost of both children's medical treatment totaled $421,768.35, though the obligation was later adjusted to $115,362.83 to reflect Medicaid reimbursement rates. Ultimately, the $115,362.83 payment was made to Saint Alphonsus by Ada County and the Idaho Catastrophic Health Care Costs Program ("CAT Fund"). In turn, the Board sought reimbursement from Jacobs and Owens. Unable to pay for the cost of the medical treatment, Jacobs filed two applications for medical indigency with the Board.

Jacobs signed the children's applications for medical indigency as the "Patient/Applicant." D.J.'s application was originally completed with "N/A" under the section provided to list a co-applicant, a spouse, or a significant other, but it was later amended by someone other than Owens to include Owens's name. K.J.'s application has "a typed 'N/A' with names and other

---

[1] It appears from the record that the County also issued an order of reimbursement to Jacobs, but only Owens's order is at issue in this appeal.

information scratched out in black in that section." K.J.'s application lists Phyllis Jacobs as the child's mother, and both K.J.'s and D.J.'s applications list "Stephanie Jacobs" as their non-custodial parent. Owens never signed these applications or "any documents acknowledging the effect of the medical indigency applications[,]" though the Board subpoenaed her twice to testify in the matter of the applications.

In February 2018, the Board perfected certain statutory liens against Owens's real and personal property.[2] The following month, the Board denied the medical indigency applications for lack of information, but in December 2018, issued a partial approval and partial denial after Saint Alphonsus (as a third-party applicant) appealed. As a result of the partial approval, the Board then issued orders of reimbursement (one per application) against Owens and Jacobs to pay Ada County and the CAT Fund for the portion of their children's medical bills that had been paid by Ada County and the CAT Fund.[3] The orders also required Owens and Jacobs to sign promissory notes with Ada County to acknowledge their purported financial obligation. Each of the orders of reimbursement "requires Owens to make payments totaling $3,600 in 144 monthly installments of $25. Owens's total reimbursement for both D.J. and K.J. under the Orders will be $7,200 over 12 years, although the Orders for Reimbursement specify that reimbursement can be required up to the full amount expended." Owens never signed the promissory notes evidencing her purported obligations. It should also be noted that Ada County takes the position that payments made by Owens in the amount indicated in the orders of reimbursement would not extinguish Owens's obligation to the Board. The lien on Owens's property was for the entire amount paid to Saint Alphonsus or $115,362.83.

In April 2020, Owens filed a "Petition for Reconsideration or in the Alternative a Declaratory Ruling as to the Non-Applicability of the Final Determination and Order of Reimbursement" with the Board, arguing in part that she was not an "applicant," and, therefore, could not be required to reimburse Ada County. The Board denied the petition for reconsideration,

---

[2] Idaho Code section 31-3503 authorizes the creation of an automatic lien upon the *filing* of an application pursuant to the Medical Indigency Act. Unlike a lien in the traditional sense, which does not create a security interest until some debt or obligation has been imposed upon the obligor, section 31-3503 permits the attachment of a lien at the time a request for public funds is filed. *See Lien*, BLACK'S LAW DICTIONARY 922 (6th ed. 1990) (defining "lien" as "[a] claim, encumbrance, or charge on property for payment of some debt, obligation or duty").

[3] Specifically, the Board ordered Owens "to reimburse Ada County and the Catastrophic Health Care Costs Program for the medical assistance paid" on behalf of her children. Idaho Code section 31-3517 limits county responsibility of indigent medical costs to $11,000 per claim and obligates the State of Idaho (with money from the CAT Fund) to pay for any additional obligation above $11,000.

explaining that the Idaho Administrative Procedure Act does not control and the proper methods for review are set forth in chapter 35 of title 31 of the Idaho Code (the Medical Indigency Act), which requires reconsideration by the Board before, not after, a Final Determination has been issued. Owens then challenged the Board's decision via a petition for judicial review in district court. In her petition, Owens raised several issues, including in relevant part:

    a. Whether Stephanie Owens is a "Patient" or "Applicant" as defined by Chapter 35, Title 31, Idaho Code.

    b. Whether the Ada County Board of County Commissioners exceeded their [sic] statutory authority by claiming a lien on the personal and real property owned by Stephanie Owens.

. . .

    d. Whether the Board's findings, inferences, conclusions or decisions were (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) not supported by substantial evidence on the record as a whole; or (5) arbitrary, capricious, or an abuse of discretion, and the agency decision substantially prejudices the rights of the appellant.

The district court concluded that "[j]udicial review of an agency action is governed by the Idaho Administrative [P]rocedure[] Act[.]" Then, the district court remanded the case back to the Board to determine whether Owens was an "applicant" as defined in Idaho Code section 31-2505G, and, therefore, able to seek judicial review of the denial of K.J.'s and D.J.'s applications for medical indigency. Regarding the liens, the district court found that, because they had automatically perfected, the only method to challenge them was via a separate legal action and not a petition for judicial review of the denial of the indigency applications.

On remand, the Board found that Owens was "an 'applicant' and/or 'obligated person' under the Medical Indigency Act[.]"[4] Before the district court, Owens did not challenge the conclusion that she was an "obligated person" as that term is defined by Idaho Code section 31-3502(19), nor does she dispute this conclusion on appeal. Because Owens met the definition of an "'applicant' and/or an 'obligated person[,]'" the Board determined that she "is legally responsible for both children[,]" and, therefore, liable to reimburse Ada County.

---

[4] We interpret the Board's use of "and/or" to mean the Board concluded that Owens could be an "applicant" or an "obligated person" or both. However, it is not clear from the Board's decision which of those interpretations it was making, and the statutes attach significance to this distinction.

After the case returned to the district court, the district court affirmed the findings of the Board, concluding that Owens never sought to reject the payments made from Ada County or the CAT Fund. Though the district court determined that an individual's receipt of financial assistance under the Act is not enough on its own to classify that individual as an "applicant," it still concluded that the Board had properly categorized Owens as an applicant because "she appeared before the Board, participated in testimony, [and] ultimately submitted documentation that led to the Board approving and paying financial assistance for her children." The district court further explained that Owens's participation in this manner was sufficient to uphold the Board's determination that she was both an applicant *and* an obligated person. The district court then affirmed the Board's orders of reimbursement for both K.J.'s and D.J.'s medical indigency applications. Owens timely appealed.

## II. STANDARD OF REVIEW

Decisions of a board of county commissioners are treated as decisions of an agency. *Saint Alphonsus Reg'l Med. Ctr., Inc. v. Bd. Comm'rs Ada Cnty.*, 146 Idaho 51, 53, 190 P.3d 870, 872 (2008). "This Court independently reviews the agency's decision." *Id.* "We give serious consideration to the district court's decision, but review the matter as if the case were directly appealed from the agency." *Id.* (internal quotation marks and citations omitted). "This Court will not substitute its judgment for that of the agency on questions of fact and it will uphold the agency's findings if supported by substantial and competent evidence." *Mercy Med. Ctr. v. Ada County*, 146 Idaho 226, 229, 192 P.3d 1050, 1053 (2008) (internal citations omitted). However, we freely "correct errors of law in the agency's decision." *Id.*

> [T]he Board's decision may only be overturned if this Court finds that it:
> (a) violates statutory or constitutional provisions; (b) exceeds the Board's statutory
> authority; (c) is made upon unlawful procedure; (d) is not supported by substantial
> evidence in the record; or (e) is arbitrary, capricious, or an abuse of discretion.

*Id.* Barring the reasons described above, "agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4).

## III. ANALYSIS

A. **The Board erred by concluding that Owens is an "applicant," as defined in the Medical Indigency Act; because she is not an "applicant", she is not subject to a reimbursement order.**

   1. Owens is not an "applicant," as defined in the Medical Indigency Act.

5

The bulk of Owens's appeal challenges the district court's affirmation of the Board's determination that she *requested* financial assistance from the County, making her an "applicant" as defined in the Act. I.C. §§ 31-3501 to -3558. In its first review of Owens's petition for judicial review, the district court was unable to determine whether Owens was an "applicant" under the Act, so it remanded the question to the Board for additional fact finding. On remand, the Board determined that Owens was "an 'applicant' *and/or* 'obligated person'" under the Act for purposes of K.J.'s and D.J.'s medical indigency applications. (Italics added.) The Board found that Jacobs, the children's father, had signed the applications "as an applicant[,]" and on both K.J.'s application and D.J.'s application, "Owens was listed as a coapplicant and [K.J.'s and D.J.'s] mother."

The Board further found that, in connection with both applications, Owens had conversations with staff from the Ada County Indigent Services to discuss the necessary documentation that she needed to provide for the application to be processed. Under the direction of Indigent Services staff, Owens then submitted an Ada County Indigent Services Required Documentation Form, listing K.J. and D.J. as her dependents. This form also listed Owens as an "applicant." The Board interpreted the use of the term "applicant" on the *required documentation form* to be sufficient to also classify Owens as an "applicant" on the *medical indigency form*. Because Owens was listed as an "applicant" on the required documentation form and because she participated in the application process via a subpoena, which threatened her with contempt of court if she did not comply with its mandates, the Board concluded that she had been involved in the application processes for K.J. and D.J., and, therefore, classified her as "an 'applicant' and/or 'obligated person'" under the Act.

The district court agreed and found that the Board's findings were supported by substantial and competent evidence. The district court explained that the Act does not "support[] a broad finding that anyone who receives assistance is an applicant and such a broad reading would make other terms within the Act superfluous. So, Owens can't be labeled an Applicant simply by receiving financial assistance approved by the Board." However, the district court still concluded that Owens was an applicant because she participated in the application process. The district court found that, although Owens's participation in the indigency application process was compulsory (*i.e.*, the result of being served with a subpoena), she still actively complied with the process in an effort to seek an approval of the applications, never objected to the subpoena or to any payments made on behalf of her children, and made no other attempts to set up a payment plan with Saint

6

Alphonsus. Therefore, the district court concluded that Owens had applied for and "received" financial assistance from Ada County and the CAT Fund.

On appeal, Owens argues that the Act's definition of "'applicant' as 'any person who is *requesting* financial assistance under this chapter[]'" is much narrower than the Board's application in this case and does not apply to her because she never actually requested financial assistance. I.C. § 31-3502(1)[5] (italics added). Owens asserts that, because she was compelled by subpoena to participate in the application process, she had no choice whether to participate, so the Board's reliance on that involvement to support its conclusion that she "complete[d] a written application" and thereby requested financial assistance was erroneous. I.C. § 31-3504(1).

As a result of this erroneous classification, Owens argues that the orders of reimbursement and automatic liens created by the medical indigency applications must be voided because she was never given notice of the possible encumbrances. This lack of notice, Owens contends, rises to the level of a due process violation. In sum, Owens concludes that a request for financial assistance must be an affirmative, voluntary action.

In contrast, the Board argues that passive involvement or involvement compelled by the issuance of a subpoena under threat of consequences is sufficient to characterize an individual as an applicant and to order reimbursement. According to the Board, classifying Owens as an "applicant" under the Act is appropriate because she "had the right *not* to cooperate and be personally responsible for her children's medical care costs[,]" but because she did not exercise that right, she cannot now argue that she did not participate in the application process.

In response, Owens emphasizes the Act's distinct delineation between an applicant, a third-party applicant, and an obligated person. Owens argues that classifying her as both an obligated person and an applicant renders superfluous the definition of an obligated person and the Act's intentional distinction between the two. Additionally, Owens argues that, even under the Board's interpretation of "applicant," the Board's classification is still incorrect. Owens explains that the first medical indigency application was denied because Owens refused to submit the required documentation; it was only after Saint Alphonsus appealed, and a subpoena compelled

---

[5] The numbering for the code provisions in the Act changed significantly at the end of the 2022 regular legislative session due to numerous sections of the Act being repealed. However, because the old numbering was still in place at the time this case arose, we use that same numbering scheme here. *See, e.g.*, *Horton v. Horton*, 171 Idaho 60, 70 n.2, 518 P.3d 359, 369 n.2 (2022).

her to produce the financial documents, that the application was partially approved, and she was then deemed an "applicant."

We hold that the Board erred in its interpretation of the Act and subsequent conclusion that Owens is "an 'applicant' and/or 'obligated person[.]'" Despite the inclusion of the word "or," the Board found that Owens had "requested financial assistance under the Medical Indigency Act . . . and is thus an 'applicant' as that term is defined[.]" The Board also found that Owens was an "obligated person" because she "is legally responsible" for her children.

The purpose of statutory interpretation is "to give effect to legislative intent." *Saint Alphonsus Reg'l Med. Ctr. v. Elmore County*, 158 Idaho 648, 652–53, 350 P.3d 1025, 1029–30 (2015) (internal citations and quotation marks omitted). "Provisions . . . must be interpreted in the context of the entire document." *Id.* This Court is required to "give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant." *Id.* This Court also reads statutes *in pari materia*, or "construed together . . . to be interpreted with other acts relating to the same matter or subject." *Id.*

Idaho Code section 31-3502(1) defined "applicant" as "any person who is requesting financial assistance under this chapter." An "obligated person," on the other hand, is "the person or persons who are legally responsible for an applicant including, but not limited to, parents of minors or dependents." I.C. § 31-3502(19). Section 31-3502(7) explained that a "'[c]ompleted application' shall include at a minimum the cover sheet requesting services, applicant information including diagnosis and requests for services and signatures, *personal and financial information of the applicant and obligated person or persons*, patient rights and responsibilities, releases and all other signatures required in the application." (Italics added.)

The Board erred when it concluded that Owens had "requested financial assistance" simply because she had provided her personal and financial information when it was demanded and was, therefore, an applicant. A plain reading of a completed application explains that obligated persons must also provide personal and financial information. When the Board conflated the obligations of applicants and obligated persons, it drew an incorrect legal conclusion.

Additionally, a determination of medical indigency relies on analysis of the finances of both applicants and obligated persons. *See, e.g.*, I.C. §§ 31-3502(7), (17), (25). The Board erroneously failed to distinguish between Jacobs's involvement with the applications as an applicant (an undisputed designation) and Owens's involvement as an obligated person. ("Mr.

8

Jacobs and Ms. Owens also provided testimony and documents in support [D.J.'s application] . . . The hearing was then continued . . . to give them more time to gather documents[.]").

The Act consistently refers to both obligated persons and applicants as separate individuals. However, as the Board reads the obligations of those parties in the application process, they are one and the same. Again, this interpretation renders superfluous much of the language in the Act. For example, in the definition of "medical indigent[,]" the Act refers to the application of *both* the applicant and the obligated person:

> Nothing in this definition shall prevent the board and the county commissioners from requiring the applicant and obligated persons to reimburse the county and the catastrophic health care cost program, where appropriate, for all or a portion of their medical expenses, when investigation of *their application* pursuant to this chapter, determines their ability to do so.

I.C. § 31-3502(17) (italics added). The use of "their" refers to the application of both the applicant and the obligated person. However, this statutory definition continues to differentiate between applicant and obligated person, despite the presence of a shared application. Under this plain reading of the statute, the Board's argument that because Owens participated in the application process, then she must be an applicant, is overbroad.

The Board's conclusion that compliance with the subpoena is sufficient to classify Owens as an applicant is also erroneous and renders superfluous much of the language of the Act. According to the Board, Owens's involvement in the application process makes her an applicant, and the only way that she could *not* be classified as an applicant is if she affirmatively challenged or failed to comply with the subpoena. This interpretation is not only contrary to the plain language of the statute, but it is also overbroad in light of the definitions within the Act.

Nowhere in the Act is there support for the proposition that the only way to avoid classification as an applicant is to challenge the subpoenas in medical indigency applications. To the contrary, the Act requires both obligated persons and applicants to provide financial information, the production of which, in this case, was commanded by the subpoena. I.C. § 31-3502(7) ("'Completed application' shall include at a minimum . . . financial information of the applicant and obligated person or persons[.]") There is nothing in the statute that supports the Board's position that compliance with a subpoena is sufficient to classify someone as an applicant. Moreover, challenging subpoenas requires a formal response within the court system. If the individuals subject to the subpoenas are, in fact, indigent, then access to qualified legal representation in such a matter is almost, by definition, out of reach.

9

In addition to the plain reading of the statute above, previous case law from this Court supports a narrower interpretation of the word "applicant" as used in the Act. Though this Court has not previously determined whether an individual can be both an applicant and an obligated person, as demonstrated below, it has engaged in statutory interpretation regarding other portions of the Act.

The lack of Owens's signature indicates that she never submitted a "completed application," as is required by the Act. A completed application requires in part "releases and *all other signatures required in the application*." I.C. § 31-3502(7) (italics added). This Court has previously stated that an application must be signed by *either* an applicant or a third-party applicant in order to be deemed "completed." *Saint Alphonsus Reg'l Med. Ctr.*, 158 Idaho at 652, 350 P.3d at 1029. In *Saint Alphonsus*, the hospital submitted a third-party application on behalf of two patients to whom the hospital had provided medical care. *Id.* at 649, 350 P.3d at 1026. The patients did not sign the portions of the applications that said "that by completing this application form, it [the application] will be used to determine my eligibility[,] . . . that I have read, understand, and will comply with the rules promulgated . . . pursuant to [the Act,] . . . Patient Rights and Responsibilities for State and County Assistance, . . . Release of Information." *Id.* However, a representative from Saint Alphonsus signed the portion of the application that acknowledged its submission "by a third[-]party applicant *on behalf of the applicant*[.]" *Id.* (italics added). The Board in *Saint Alphonsus* concluded that these were not "completed applications" because they did not contain the patients' signatures or their contact and financial information. *Id.* at 649–50, 350 P.3d at 1026–27.

This Court reversed and concluded that "a third[-]party's application does not require the signature of the patient to be 'completed' under the Act" because the plain language of the statute said an application could be submitted by an applicant *or* a third-party applicant. *Id.* at 652, 350 P.3d at 1029. Because "a determination of a 'completed application' depends on the identity of the party submitting the application and the knowledge and ability of that party to respond to the inquiries and requests in the application[,]" the party actually "submitting the application does not have to provide the signatures of any other individual or entity besides its own, even if the application requests those signatures in other parts of the document." *Id.* at 653–54, 350 P.3d at 1030–31 (italics added).

Under our analysis in *Saint Alphonsus*, Owens cannot be classified as an "applicant" unless she signed the applications. *Saint Alphonsus* distinguished between applicants and third-party applicants but clearly required the applicant (third-party or individual) who is submitting the application to sign it. *Id.* Owens never signed the applications, nor did she write her initials on the form acknowledging her rights and responsibilities as an applicant. Because Owens never signed the applications, the Board erred when it classified her as an applicant.

As described above, the Board erred as a matter of law in its interpretation of the Act and by not distinguishing between applicants and obligated persons. In addition, its factual findings are also clearly erroneous. The Board failed to distinguish in its findings of fact between the evidence supporting its conclusion that Owens was an "obligated person" and the evidence supporting its conclusion that Owens was an "applicant." The Board concluded that Owens had "supported [K.J.'s application] by submitting copies of her paystubs, bank statements, home loan documentation, and bills, which were necessary for this Board to make a determination as to the approval or denial of [K.J.'s application]." However, as described in the definition of "completed application," this type of financial information is necessary for both applicants *and* obligated persons. I.C. § 31-3502(7). It cannot be said that Owens provided this information voluntarily because she was compelled by a subpoena to provide it.

Additionally, unlike Jacobs, Owens was never apprised of her substantial responsibilities if she were to sign and file an application. When Jacobs completed the application, he was notified by the Indigency Office of the possibility of encumbrances on his property and his possible liability for repayment. The Indigency Office also required Jacobs to initial his name to demonstrate that he consented to various parts of the application process, including the retrieval of personal information from the Idaho Department of Health and Welfare and from previous tax returns. By contrast, Owens was never apprised of the possible liability, nor did she consent to the application process in the same manner as Jacobs. Therefore, as asserted by Owens, "evidence that a person was compelled to provide information and attend hearings does not make it more or less probable that a person is an *applicant* than the person is an *obligated person*."

We agree with Owens that the distinction between an obligated person and an applicant can be found in her lack of signature on the medical indigency application. The Board's conclusion to the contrary is clearly erroneous. An applicant is someone who "request[s] financial assistance under this chapter." I.C. § 31-3502(1). As asserted by Owens, the word "request" implies an

11

affirmative act, yet her participation in this case was not volitional; it was compelled. Further, Owens argues that she could not have "requested" assistance because she never signed the applications, never provided her initials as an acknowledgment and acceptance of the rights and responsibilities that would be incurred by the application, and, therefore, she never provided a "completed application," as required by the Act.

Because Owens never signed the applications and did not receive notice of her possible obligations, as did Jacobs, the Board erred in classifying Owens as an "applicant." Merriam-Webster defines "request" as "to make a request to or of[;] to ask as a favor or privilege[;] to ask (a person) to come or go to a thing or place[; or] to ask for[.]"[6] Based on the plain language of "request," the Board erred in finding that Owens's compelled participation could be construed to mean that she "made a request . . . of" financial assistance because she did not have a choice to participate. *Id.*

In sum, Owens is not an applicant as defined by the Act. The Board's classification of Owens as an applicant because she provided financial information is not only an overbroad (and, therefore, legally erroneous) reading of section 31-3502(7), but it also fails to account for the different ways in which Jacobs and Owens participated in the application process. The Board erred in classifying Owens an "applicant" for the medical indigency applications. Therefore, the Board's action in this manner amounts to improper agency action as defined in Idaho Code section 67-5279(3)(e) because it was arbitrary and capricious.

However, section 67-5279(4) requires a two-step process – identifying improper agency action and showing that the action prejudiced the individual's substantial rights. Only then will this Court be permitted to overturn agency action. I.C. § 67-5279(4). There is no question in this case that Owens's substantial rights have been prejudiced. The Board issued an order of reimbursement imposing significant obligations against Owens, including the imposition of an automatic lien on her home. Owens has demonstrated that the actions of the Board were arbitrary and capricious and that her substantial rights were prejudiced by action. Therefore, we reverse the Board's conclusion that Owens is an applicant as defined in the Act and its subsequent Order of Reimbursement that ordered Owens to reimburse Ada County and the CAT Fund and imposed a statutory lien on Owens's home.

---

[6] *Request*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/request (last visited Jan. 31, 2022).

2. The Board's Reimbursement Orders and Statutory Liens are void because the Board can only compel applicants to reimburse Ada County, and Owens is not an applicant.

As explained above, Owens is not an applicant under the Act. Since she is not an applicant, the Board acted outside its authority when it placed a lien on Owens's real and personal property and improperly ordered reimbursement from Owens. Idaho Code section 31-3510A[7] explained that "[r]eceipt of financial assistance pursuant to this chapter shall obligate *an applicant* to reimburse the county from which assistance is received and the board for such reasonable portion of the financial assistance paid on behalf of the applicant[.]" (Italics added.) Similarly, Idaho Code section 31-3504(4) stated that "[u]pon application for financial assistance pursuant to this chapter an automatic lien shall attach to all real and personal property *of the applicant*[.]" These provisions only obligate applicants to repay the obligated county and the state and permit automatic liens to attach only to the property of applicants. Because the Act only requires an applicant to reimburse the obligated county, non-applicants, such as Owens, are not liable for reimbursement, nor will the automatic liens attach. As a result, the Board's classification of Owens as an applicant was arbitrary and capricious, as described in the preceding section. Likewise, the attachment of automatic liens to Owens's property was arbitrary and capricious of a non-applicant. As described above, we also conclude that Owens was prejudiced by the Board's actions and reverse the orders of reimbursement imposed against her, including the attachment of automatic liens.

**B.      Owens is entitled to attorney fees under Idaho Code section 12-117.**

The district court determined that the Board was the prevailing party. The district court further determined that the Board was not entitled to attorney fees pursuant to Idaho Code section 12-117 because the case presented an issue of first impression and Owens did not "act[] without a reasonable basis of law." The district court also determined that Owens, as the losing party, was not entitled to attorney fees pursuant to section 12-117. Neither party provides argument on whether the district court erred in concluding that each party would bear their own fees. However, on appeal, Owens argues that she is entitled to attorney fees pursuant to section 12-117 because

---

[7] Now codified at I.C. § 31-3503(1), modified to read:

An approved application for financial assistance for services received through March 31, 2022, shall obligate an applicant to reimburse the obligated county and the state for such reasonable portion of the financial assistance paid on behalf of the applicant as the county commissioners may determine that the applicant is able to pay from resources over a reasonable period of time.

This change made during the legislative session in 2022 is not a substantive alteration that affects our analysis, since both versions only obligate "an applicant" to reimburse the obligated county.

13

"[t]he Board of Ada County Commissioners acted without a reasonable basis in fact or law" when it concluded that Owens was an applicant, even though she never signed the application and her participation was compelled only via subpoena. On the other hand, the Board argues that Owens pursued this appeal frivolously because she is required to reimburse Ada County and the CAT Fund either as an applicant or as an obligated person,[8] so her request to differentiate between the two was unreasonable. As a result, the Board posits, it—not Owens—is entitled to attorney fees pursuant to section 12-117.

In *Saint Alphonsus Regional Medical Center, Inc. v. Board of County Commissioners of Ada County*, 146 Idaho 51, 55, 190 P.3d 870, 874 (2008), this Court declined to award attorney fees to either party on an issue of first impression. However, an issue of first impression is not a "free pass" to bring unreasonable arguments. *Ada County v. Browning*, 168 Idaho 856, 861, 489 P.3d 443, 448 (2021) (internal quotation marks and citations omitted). In *Browning*, this Court explained that, although the case had presented an issue of first impression, the prevailing party (Browning) was entitled to attorney fees because Ada County had acted unreasonably. *Id.* This Court said that "[a] nonprevailing party's position is unreasonable when it contradicts the plain reading of a statute or where the nonprevailing party does not appear to have suffered actual harm from the prevailing party's actions." *Id.* This Court concluded that, although an appellate court had not previously considered the exact question, the plain reading of the statutes at issue were clear enough to dispose of any reasonable argument to the contrary. *Id.* at 862, 489 P.3d at 449.

Here, Owens is entitled to attorney fees because she is the prevailing party, and the Board unreasonably conflated the definitions of obligated person and applicant. Though this Court's review was necessary to determine whether compelled participation in the medical indigency application makes someone both an applicant and an obligated person or simply an obligated person, a plain reading of the statute necessarily leads to the conclusion that the legislature intended to distinguish between applicants and obligated persons. It is possible that someone could be both an applicant and an obligated person. However, we are not required to make that decision today.

---

[8] The Board failed to provide any citation supporting its claim that an obligated person must reimburse Ada County. It is possible that the Board meant that, as the parent of minor children, Owens would be liable to reimburse Ada County pursuant to the definition of "obligated person" in Idaho Code section 31-3501(19), in its form before the 2022 legislative session (defining an obligated person as "the person or persons who are legally responsible for an applicant, including but not limited to parents of minors or dependents[.]"). However, "[w]e will not consider assignments of error not supported by argument and authority[.]" *Weinstein v. Prudential Prop. and Cas. Ins. Co.*, 149 Idaho 299, 313, 233 P.3d 1221, 1235 (2010) (internal quotation marks and citation omitted).

14

It is enough to conclude that Owens was not an applicant because she never signed an application, was never apprised of the attendant responsibilities of an applicant, and never requested that the Board pay for her children's medical bills. Because the Board's conflation of the issue "contradicts the plain reading of the statute," we find that Owens is entitled to attorney fees pursuant to Idaho Code section 12-117. *Id.* at 861, 489 P.3d at 448. "Section 12-117 exists to prevent Idaho citizens from footing the bill when a local government desires to bring an unsuccessful test case in the face of clearly established law." *Id.* at 862, 489 P.3d at 449.

We also take issue with the Board's formulation of its response to the district court's remand for the Board to determine if Owens was an "applicant." In its order of remand, the district court requested a determination "on whether Owens is an 'applicant' and/or 'obligated person' on each application." The Board seemingly followed this directive when it phrased its response as follows: Owens is "an 'applicant' and/or an 'obligated person.'" We recognize that the Board in this instance appears to be following the language used by the district court in its order of remand; however, as discussed above, we directly review agency decisions, rather than those of the district court. The use of "and/or" in this fashion is insufficient for any of the Board's tasks, but particularly so in its mandate to carry out the administration of medical indigency applications.

Simply put, the Board erred as soon as it classified Owens "an 'applicant' and/or 'obligated person[.]'" This locution can be interpreted to mean that the Board found Owens was an applicant, an obligated person, or both. However, one of those possible findings, and the one which we find most plausible, is that Owens was an obligated person but not an applicant. Not only does the Board's characterization run afoul of the plain language of the statute, which distinguishes between applicants and obligated persons, but it also fails to provide any clarity to individuals like Owens as to what their positions are in the application process. The Board's decision leaves Owens and others similarly situated without knowledge as to what their obligations are under the Act. Owens's status matters, as evidenced by the question before this Court, and our jurisprudence prevents us from inferring that the legislature intended the distinction to be without meaning.

As a result, we find the Board's response to the district court and its failure to give precise meaning to the difference between applicants and obligated persons was unreasonable. Owens is entitled to attorney fees and costs on appeal.

15

## IV. CONCLUSION

We reverse the district court's conclusion that Owens was an "applicant" as defined in the Act because she never signed the medical indigency applications for her children and she did not affirmatively participate in the application process. Nor was she ever apprised of the potential financial responsibilities for which she would be liable if she were to submit a medical indigency application. Finally, she never requested reimbursement. As a result, the Board acted outside its authority when it ordered Owens to reimburse Ada County for its expenses and when it placed automatic liens on her property. As the party who succeeded on several arguments based on the plain reading of the applicable statutes, Owens is the prevailing party. She is entitled to attorney fees pursuant to Idaho Code section 12-117 and costs as a matter of right. I.A.R. 40.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.